UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**"O"**

| Case No. | CR 13-403-CAS | | | | | Date | September 17, 2014 |
|---|---|---|---|---|---|---|---|

| Present: The Honorable | CHRISTINA A. SNYDER |
|---|---|

| Interpreter | N/A |
|---|---|

| Catherine Jeang | Not Present | Jeff Mitchell, Not Present<br>Christopher Brunwin, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| AARON RAMOS | NOT | X | | ALYSSA BELL, DFPD<br>SAMUEL JOSEPHS, DFPD<br>GUY IVERSON, DFPD | NOT | X | |

(IN CHAMBERS):

DEFENDANT'S MOTION TO EXCLUDE PRIOR CONVICTIONS UNDER FRE 609 (Dkt. 119, filed July 28, 2014)

DEFENDANT'S MOTION TO ADMIT STATEMENTS MADE BY THE GOVERNMENT RE: CO-DEFENDANT SHARON PAIZ UNDER FRE 801(d)(2) (Dkt. 123, filed July 28, 2014)

DEFENDANT'S MOTION TO EXCLUDE EVIDENCE OF "OTHER ACTS" PURSUANT TO FRE 401, 403, 404(b) (Dkt. 137, filed Aug. 4, 2014)

DEFENDANT'S MOTION TO ADMIT EXPERT TESTIMONY REGARDING THE DANGERS OF DEPORTATION TO EL SALVADOR FOR KNOWN CONFIDENTIAL INFORMANTS (Dkt. 149, filed July 30, 2014)

DEFENDANT'S MOTION TO ADMIT EVIDENCE OF CONFIDENTIAL INFORMANT'S MODUS OPERANDI UNDER FRE 404(b) AND 608(b). (Dkt. 150, filed July 30, 2014)

**Proceedings:**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**"O"**

GOVERNMENT'S MOTION TO PRECLUDE IMPEACHMENT
EVIDENCE RE: INFORMANT  (Dkt. 125, filed July 28, 2014)

GOVERNMENT'S MOTION FOR DISCOVERY AND PRECLUSION OF
EVIDENCE IN VIOLATION OF DISCOVERY AGREEMENT (Dkt. 133,
filed Aug. 4, 2014)

GOVERNMENT'S MOTION TO PRECLUDE EVIDENCE OBTAINED IN
VIOLATION OF RULE 17 (Dkt. 180, filed Aug. 28, 2014)

## I.  INTRODUCTION AND BACKGROUND

In February 2013, a grand jury charged defendants Aaron Ramos ("Ramos") and Sharon Paiz ("Paiz") with one count of conspiracy to distribute at least fifty grams of methamphetamine in violation of 21 U.S.C. § § 841(a)(1) and (b)(1)(A)(viii) (count one), as well as one count of distribution of at least fifty grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) (count two).  Id.

Defendant Ramos has filed five motions in limine, dkts. 119, 123, 137, 149, 150, and the government has filed one motion in limine, dkt. 125.  The government has also filed two motions seeking to preclude evidence obtained by the defense through an alleged violation of a discovery agreement, or alternatively, by reason of an alleged violation of Federal Rule of Criminal Procedure 17.  Dkts. 122, 180.

On August 25, 2014, the Court heard argument regarding the motions in limine, as well as the government's motion to preclude evidence pursuant to the alleged violation of the discovery agreement.  Dkt. 179.  At that hearing, the government argued that the defense breached a discovery agreement when it caused an *ex parte*, *in camera* subpoena to issue to the Department of Homeland Security ("DHS") on April 17, 2014.  Dkt.  86.[1]  The government further argued that the subpoena was obtained in violation of Rule 17.  Although the Court

---

[1] The subpoena prohibited DHS from disclosing the Court's order, subpoena, or documents produced pursuant to the subpoena to the United States' Attorney's Office ("USAO").  On August 22, 2014, DHS filed an *in camera* motion requesting that the Court modify the subpoena to remove these prohibitions and permit communication between DHS and the USAO.  Dkt. 172.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**"O"**

found that the defense had not breached the letter of the discovery agreement, the Court expressed concern that the defense had undermined the spirit of the agreement.[2]  Accordingly, the Court offered the defense a choice: Permit Special Agent Rene Bardales ("SA Bardales")—the individual who had been tasked with complying with the DHS subpoena—to discuss the subpoena and documents produced pursuant to it with the government, or litigate a Rule 17 motion and risk complete exclusion of the subpoenaed documents.

The defense opted to permit SA Bardles to speak with the government.  However, in the event that the conversation with SA Bardales revealed that the Rule 17 subpoena had been issued for an improper purpose, the government requested leave to file a motion to preclude evidence obtained in violation of Rule 17.  The Court granted the government's request.

After speaking with SA Bardales, the government filed its Rule 17 motion on August 28, 2014.  Dkt. 180.  Defendant opposed the motion on September 4, 2014.  Dkt. 183.  On September 9, 2014, the Court held a another hearing.  Dkt. 190.  During that hearing, defense counsel expressed concern that defendant's Sixth Amendment rights had been violated when the Court permitted SA Bardales to discuss the DHS subpoena with the government.  Specifically, the defense asserted that the information conveyed by SA Bardales impermissibly put the government had on notice of defendant's trial strategy.  To determine whether this notice violated defendant's Sixth Amendment right to counsel, the defense requested an evidentiary hearing pursuant to United States v. Danielson, 325 F.3d 1054 (9th Cir. 2003), as amended (May 19, 2003).

The parties briefed both the propriety of holding a *Danielson* hearing, as well as the evidentiary showing required should the Court decide that a *Danielson* hearing was proper. Dkts. 186, 191, 192.  The Court heard argument on September 16, 2014.

Having considered the parties' arguments, the Court finds and concludes as follows.

## II.    MOTIONS AND ISSUES FLOWING FROM THE DHS SUBPOENA

The government asserts that in December 2013, the parties agreed that Ramos would not file a motion seeking the identity of a confidential informant ("the CI") if the government disclosed certain items beyond the scope of its discovery obligations.  Gov't Mot. Discovery 1-2.  The defense allegedly violated that agreement on April 17, 2014, when it caused the Court to

---

[2] The DHS subpoena and the discovery agreement are discussed in detail *infra*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**"O"**

enter an *ex parte*, *in camera* order pursuant to Rule 17(c) directing DHS to produce documents relating to the CI.  Dkts. 84-87.

DHS tasked SA Rene Bardales with producing the subpoenaed materials in June 2014.  SA Bardales is currently the agent on the Ramos case, but he was precluded from discussing the subpoena itself and the subpoenaed documents with the government—until this Court authorized him to do so on September 9, 2014.  Dkt. 190.

According to the government, defense counsels' pursuit of the subpoena requires exclusion of all documents produced pursuant to it.  According to defendant, this Court's September 9, 2014 order necessitates a probing inquiry into the government's trial strategy in order to protect Ramos's Sixth Amendment rights.  The Court is unpersuaded.  In this case, the evidence does not demonstrate that either the government or the defense has engaged in misconduct that would warrant such extreme remedies.  Rather, this is a case of tactical maneuvering by zealous advocates.

A.     **Government's Motion for Discovery And Preclusion of Evidence Obtained in Violation of the Discovery Agreement**

On August 4, 2014, the government filed a motion for discovery and preclusion of evidence based on defense counsel's alleged violation of a discovery agreement.  Dkt. 133.  Ramos responded on August 6, 2014, dkt. 146, and the Court heard argument on August 25, 2014, dkt 179.

As discussed *supra*, the government accuses defense counsel of violating a discovery agreement by using this Court's process to procure documents from DHS related to the CI.  Gov't Mot. Disc. at 2.  The defense responds that it did not breach the discovery agreement, since it "obtained information regarding the informant's true identity through traditional investigative techniques, and entirely without the Court's intervention."  Def.'s Opp'n Disc. Mot. at 3-4.

At the hearing, the Court inquired into the scope of the discovery agreement between defense counsel and the government.  The defense asserted that the discovery agreement only prohibited defendant from seeking to discover the CI's identity through the use of the Court's process.  Defense counsel then explained that the defense uncovered the CI's identity through traditional investigatory procedures and subsequently, with the name of the CI in its possession, issued a subpoena to DHS to obtain further information regarding the CI's activities.  The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**"O"**

government responded that the "spirit" of the discovery agreement prohibited the defense from using any means—not solely this Court's formal process—to seek the CI's identity.

Here, the only "discovery agreement" presented to the Court was an email exchange between counsel that occurred in December 2013.  See Gov't Mot. Disc. Ex. A.  This limited documentation suggests that the express terms of the agreement only prohibited defense counsel from filing a motion to seek the identity of the CI.  Id.  Moreover, it is apparent from the content of the defense's *ex parte* application for the DHS subpoena that the defense knew the CI's identity before making the request for the subpoena.  Because the defense discovered the CI's identity through independent investigation, the Court finds that the defense did not breach the discovery agreement.  Accordingly, the Court DENIES the government's motion.

**B.      Government's Motion for Preclusion of Evidence Obtained in Violation of Rule 17**

On August 28, 2014, the government filed a motion to preclude evidence obtained in violation of Federal Rule of Criminal Procedure 17(c).  Dkt 180.  The defense responded on September 4, 2014, dkt. 183, and the Court heard argument on September 9, 2014, dkt 190.

Rule 17(c) "governs the issuance of subpoenas duces tecum in federal criminal proceedings."  United States v. Nixon, 418 U.S. 683, 697-98 (1974).  In Nixon, the Supreme Court held that the proponent of the subpoena must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity."  Nixon, 418 U.S. at 699.  Because Rule 17(c) was not intended to "provide a means of discovery for criminal cases," the subpoena must not constitute a general "fishing expedition."  Id. at 698-700.  Rule 17(c)(2) further allows a court to consider a motion to quash if the subpoena is unreasonable or oppressive.

At bottom, the government argues that the subpoena was an overly broad "fishing expedition" used by the defense to obtain pre-trial discovery and evade the proper channels of Rule 16.  Mot. Rule 17 at 2-4.  Additionally, the government asserts that the subpoena yielded material relevant to impeach the CI, and that the use of Rule 17(c) to obtain impeachment material is improper.  The defense first responds that the government lacks standing to challenge the subpoena, since it was issued to DHS, and in any event, that the challenge is untimely.  Opp'n Rule 17 at 6-7.  Further, the defense asserts that the *in camera* declaration of counsel accompanying the subpoena satisfied the Nixon requirements.  Id. at 11.

As a preliminary matter, the Court is not persuaded that the government has standing to bring this motion.  Although the Ninth Circuit has not articulated a standard for third-party

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**"O"**

standing to quash a subpoena, courts appear to agree that "[a] party only has standing to move to quash the subpoena issued to another when the subpoena infringes upon the movant's legitimate interests."  United States v. Tomison, 969 F. Supp. 587, 596 (E.D. Cal. 1997); see also United States v. Raineri, 670 F.2d 702, 712 (7th Cir. 1982) (citing In re Grand Jury, 619 F.2d 1022, 1027 (3rd Cir. 1980).  The only interest that the government appears to assert is ensuring defendant's compliance with the prerequisites of Rule 17.  See generally Mot. Rule 17.  Courts in the Ninth Circuit, however, do not consider that interest "legitimate."  See e.g.  United States v. Ortiz, 2013 WL 6842559 (N.D. Cal. Dec. 27, 2013) ("[T]he government argues that it has an interest in ensuring that defendants properly comply with Federal Rule of Criminal Procedure 17(c).  This is not a legitimate interest that would confer standing upon the government.").

In any event, the Court does not read Rule 17 as narrowly as the government does.  Although the government maintains that Rule 17(c) subpoenas are improper if they reveal impeachment information, Nixon did not articulate that principle.  Instead, while noting that "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial," issuance of a subpoena pursuant to Rule 17(c) may be proper where "there are other valid potential evidentiary uses for the same material."  418 U.S., 701-02.  Here, the DHS subpoena likely resulted in the production of, among other things, impeachment material related to the CI.  However, because defense counsel plausibly—and specifically—averred in her *ex parte* application for the subpoena that defendant sought evidentiary material relevant to a confidential theory of a defense, the Court DENIES the government's motion.

### C.     U.S. v. Danielson

During the September 9, 2014 hearing, defendant requested that the Court hold a Danielson hearing to determine whether the government obtained privileged information concerning defendant's trial strategy, in violation of his Sixth Amendment Rights.  Dkt. 190.  Defendant briefed this issue on September 10, 2014, dkt. 110, and the government responded on September 12, 2014, dkt. 191.  Defendant replied on September 15, 2014, dkt. 192, and the Court heard argument on September 16, 2014.

In U.S. v. Danielson, 325 F.3d 1054 (9th Cir. 2003), the Ninth Circuit addressed "what constitutes "substantial prejudice" and who bears the burden of proof when an improper intrusion into the attorney-client relationship results in the prosecution's obtaining information about the defendant's trial strategy."  Id. at 1069-70 (9th Cir. 2003) ("[I]mproper interference by the government with the confidential relationship between a criminal defendant and his counsel violates the Sixth Amendment only if such interference "substantially prejudices" the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**"O"**

defendant.").  The <u>Danielson</u> court set forth a two-part, burden shifting framework.  First, the defendant must make a prima facie showing of prejudice, which involves demonstrating that "the government . . . acted affirmatively to intrude into the attorney-client relationship and thereby to obtain [] privileged information."  <u>Id.</u> at 1271.  The burden then shifts to the government to show "by a preponderance of the evidence that it did not use this privileged information.  Specifically, it must show that all of the evidence it introduced at trial was derived from independent sources, and that all of its pre-trial and trial strategy was based on independent sources."  <u>Id.</u> at1074.  <u>Danielson</u> itself involved a criminal defendant who revealed his trial strategy to a confidential government informant.  Although the government had not directed the informant to obtain this specific information, the Court found that the government had affirmatively intruded into the attorney-client relationship.  The court ultimately remanded the case to permit the trial court to hold a proper evidentiary hearing.

The defense asserts that the government intruded into the attorney-client relationship and obtained the defense's privileged work product when SA Bardales discussed the DHS subpoena with the prosecution team, as authorized by this Court's September 9, 2014 Order.  Dkts. 186, 192.  The defense identifies three categories of work product: (1) the decision to seek the subpoena from DHS; (2) the categories of information listed in the subpoena; (3) and the specific documents the defense ultimately obtained from DHS.  Dkt. 186 at 5.  The defense further asserts that the government's recently filed trial brief, proposed jury instructions, and special verdict form indicate that the government has adjusted its trial strategy in response to obtaining this work product.  Assuming *arguendo* that <u>Danielson</u> applies to this case, the government argues that the <u>Danielson</u> does not protect work product, and that the defense waived any privilege it might have claimed in that work product when it served a subpoena on DHS and worked with SA Bardales to produce the subpoenaed documents.[3]  Further, the government argues that it did not affirmatively intrude into the attorney-client relationship, since the Court granted SA Bardales permission to discuss the DHS subpoena with the prosecution team.

---

[3] The defense asserts that it did not know that SA Bardales was the case agent when he produced documents responsive to the DHS subpoena.  Dkt. 192.  At the September 16, 2014 hearing, the government presented documentation—namely, investigative reports prepared by SA Bardales and email chains—indicating that, at the very least, defense counsel knew SA Bardales was part of the prosecution team well before the DHS subpoena was issued.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**"O"**

The Court declines to hold a <u>Danielson</u> hearing.  Although cases support defense counsel's assertion that an attorney's selection of documents may disclose trial strategy, <u>see</u> <u>e.g.</u> <u>Sporck v. Peil</u>, 759 F.2d 312 (3d Cir. 1985), in this case, the defense obtained large portions of the CI file when it subpoenaed DHS.  Moreover, in light of the fact that the defense does not aver that it disclosed to SA Bardales its intent to use any particular strategy—here, an entrapment defense—the conclusion that these documents revealed that strategy is, at most, speculative.  To the extent that the defense argues that the government's recent changes to the special verdict form and jury instructions demonstrate that the government has "adjusted" its trial strategy based on access to the subpoenaed documents, it is noteworthy that on August 4, 2014, long before these allegations arose, the defense sought to exclude evidence of defendant's "other acts" at trial.  <u>See</u> Dkt. 137.  This motion in an of itself provided the government notice that defendant intended to employ a defense that either minimized the amount of methamphetamine possessed by defendant, or negated his predisposition to distribute the drug—both indicia of an entrapment defense.

Further, even assuming that no information had been made available by SA Bardales to the government before trial, the defense has not explained why the government could not have marshaled the same evidence it has presently marshaled in its rebuttal case if the government had first been apprised of the entrapment defense at trial.

Moreover, to the extent that the documents produced pursuant to the DHS subpoena revealed the defense's strategy to impeach the CI, defendant's motions in limine, discussed *infra*, had already telegraphed this strategy to the government.  <u>See</u> Dkts. 149, 150.

## III.    MOTIONS IN LIMINE

### A.    Defendant's Motion to Exclude Prior Convictions Pursuant to Rule 609

Defendant filed a motion to exclude all of his prior convictions pursuant to Federal Rule of Evidence 609 on July 28, 2014.  Dkt. 119.  The government filed an opposition on August 4, 2014.  Dkt. 130.  The Court heard argument on August 25, 2014.  Dkt 179.

#### 1.    Misdemeanor Convictions

In the event that Ramos testifies in his own defense, Ramos seeks to exclude evidence of his five misdemeanor convictions, which include four convictions for driving with a suspended license in violation of Cal. Vehicle Code § 14601.1(a), and one conviction for driving under the influence in violation of Cal. Vehicle Code § 23152(b).  Mot. Exc. Prior Convs. at 3.  Defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**"O"**

argues that the convictions are inadmissible because they were not punishable by more than one year in prison as required by Rule 609(a)(1), nor did conviction for those crimes require proof of a dishonest act or false statement as required by Rule 609(a)(2).  Id.  The government responds that it does not intend to use Ramos's prior misdemeanor convictions for impeachment, provided Ramos does not testify falsely about those convictions.  Gov't's Opp'n at 2.

For the purpose of impeaching a criminal defendant,  Federal Rule of Evidence 609 "limits the use of misdemeanor convictions . . . to those involving dishonesty or false statements."  Medrano v. City of Los Angeles, 973 F.2d 1499, 1507 (9th Cir. 1992).  Because Ramos's misdemeanor convictions do not appear to involve dishonesty or false statements, the Court finds that Ramos's misdemeanor  convictions are inadmissible under Rule 609 to impeach Ramos's credibility.[4]

### 2. Felony Convictions

Pursuant to Rule 609(a)(1)(B), defendant also seeks to exclude four felony convictions: operation of a chop shop in violation of Cal. Vehicle Code § 10801 (2004); grand theft in violation of Cal. Penal Code § 487(a) (2005); receipt of stolen property in violation of Cal. Penal Code § 496(a) (2005); and assault with a firearm and gang allegations (2012).  Mot. Exc. Prior Convs. at 3.

Federal Rule of Evidence 609(a)(2) requires admission of "any crime regardless of the punishment . . . if the court can readily determine that establishing the elements of the crime required proving — or the witness's admitting — a dishonest act or false statement."  Fed. R. Evid. 609(a)(2).  Where a court cannot readily make this determination, Rule 609(a)(1) permits the introduction of "evidence that an accused has been convicted of [a crime punishable by death or imprisonment in excess of one year] . . . if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused."  Fed. R. Evid. 609(a)(1).  The relevant factors that a district court should consider in balancing the probative value of evidence of a defendant's prior convictions against that evidence's prejudicial effect include:  "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of defendant's testimony; and (5) the centrality of defendant's credibility."  United States v. Hursh, 217 F.3d 761, 768 (9th Cir.2000).  However, "if more than 10 years have passed since the [defendant's] conviction or release from confinement for it,

---

[4] The Court reserves decision as to whether the misdemeanors are irrelevant for all purposes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**"O"**

whichever is later . . . [e]vidence of the conviction is admissible only if[] . . . its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b).

Ramos asserts that the probative value of admitting evidence of these convictions does not outweigh their prejudicial effect. Mot. Exc. Prior Convs. at 4. Ramos first argues that the impeachment value of all four felony convictions is negligible, since none "involved proof or admission of an act of dishonesty or false statement." Id. at 6. Ramos also contends that exclusion of all four convictions is proper because Ramos does not intend to misrepresent his character as "unimpeachable." Id. at 6-7. Ramos further argues that, although these four convictions do not involve drug distribution, admission of the 2004 chop shop conviction and the gang allegations associated with the 2012 conviction are sufficiently similar to risk conviction of Ramos based on a jury's belief that "he has a propensity for distributing goods illegally, or for participating in organized crime." Id. at 6. Finally, Ramos argues that the passage of time between the instant charged offenses and the 2004 and 2005 convictions weighs in favor of excluding the 2004 and 2005 convictions. Id. at 5.

The government responds that, pursuant to the Ninth Circuit test, the impeachment value of the felony convictions is not determined by whether they "involved proof or admission of an act of dishonesty or false statement" but rather, that the value is measured in relation to the nature of the testimony and defense Ramos intends to present. Gov't's Opp'n at 4-5 (citing United States v. Cook, 608 F.2d 1175 (9th Cir. 1980), overruled on other grounds, United States v. Luce, 469 U.S. 38 (1984)). Accordingly, the government argues that the impeachment value of the convictions is significant, since Ramos will seek to portray himself as an unwitting victim, "describ[ing] criminal activity by others while suppressing the true facts of his own criminal convictions." Id. at 11. For similar reasons, the government contends that the importance of Ramos's testimony and the centrality of Ramos's credibility weigh in favor of admitting the prior felony convictions. Id. at 8-9. Further, the government argues that the four prior felony convictions are not similar to the instant drug charges, which also weighs in favor of admitting the convictions. Id. at 8.

The Court finds that the probative value of admitting Ramos's 2012 felony conviction for assault with a firearm and gang allegations would not outweigh its prejudicial effect. Although this conviction occurred close in time to the instant charges and the assault conviction is not similar to the instant drug charges, the record before the Court does not establish that the assault

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**"O"**

conviction impeaches Ramos's credibility.[5]  Accordingly, the Court GRANTS Ramos's motion to exclude the 2012 conviction.

Although Ramos's felony convictions for receipt of stolen property, grand theft, and operation of a chop shop are not presumptively admissible pursuant to Rule 609(a)(2), see United States v. Foster, 227 F.3d 1096, 1100 (9th Cir. 2000) (holding that "receipt of stolen property is not per se a crime of dishonesty for purposes of Rule 609(a)(2)" and noting that "[s]hoplifting, burglary, grand theft and bank robbery . . . are not always "deceitful"),[6] it appears that these three convictions may be relevant if Ramos decides to testify.  However, because it is unclear who will be testifying at trial, the Court reserves judgment as to the

---

[5] At oral argument, the government reasserted its position that the defense has misstated the Ninth Circuit's test for determining the impeachment value of a felony conviction.  The government is correct in its assertion that,  for the purposes of Rule 609(a)(1) balancing, the fact that a felony conviction did not involve proof or admission of an act of dishonesty or false statement does not automatically render the impeachment value of a felony conviction negligible, as defense counsel appears to argue.  See United States v. Cook, 608 F.2d 1175, 1187 (9th Cir. 1979), overruled on other grounds, United States v. Luce, 469 U.S. 38 (1984) ("Congress apparently intended to allow crimes of violence to retain some impeaching effect in some cases.").  However, this does not change the fact that courts generally find crimes of violence to be less probative of veracity than other crimes, even in the context of Rule 601(a)(1) balancing.  See 4 Weinstein's Federal Evidence § 609.05 ("[C]rimes of violence generally have limited probative value concerning the witness's character for truthfulness.") (collecting cases).

[6] Cal. Vehicle Code Section 250 defines a chop shop as "any building, lot, or other premises where any person has been engaged in altering, destroying, disassembling, dismantling, reassembling, or storing any motor vehicle or motor vehicle part known to be illegally obtained by theft." (emphasis added).  The elements of receipt of stolen property in violation of Cal. Penal Code Section 496(a) include "(1) stolen property; (2) knowledge that the property was stolen; and (3) possession of the stolen property." People v. King, 81 Cal. App. 4th 472, 476 (2000) (emphasis added).  Because convictions for operation of a chop shop and receipt of stolen property both require knowledge that the property at issue was stolen, the Court treats Ramos's conviction for operation of a chop shop in violation of Cal. Vehicle Code Section 10801 as though it were a conviction for receipt of stolen property.  See People v. Sanchez, 113 Cal. App. 4th 325, 332 (noting that receipt of stolen property can be a lesser included offense of a chop shop violation).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**"O"**

admissibility of Ramos's convictions for receipt of stolen property, grand theft, and operation of a chop shop.

**B.     Defendant's Motion to Admit Statements Made by the Government Re: Co-Defendant Sharon Paiz Pursuant to Rule 801(d)(2)**

On July 28, 2014, Ramos filed a motion to admit statements made by the government regarding co-defendant Sharon Paiz as a party-opponent omission pursuant to Federal Rule of Evidence 801(d)(2). Dkt. 123. The government filed an opposition on August 4, 2014. Dkt. 132. The Court heard argument on August 25, 2014. Dkt 179.

Ramos seeks to admit the government's statements regarding co-defendant Sharon Paiz being a "source of methamphetamine supply" and having absconded prior to her sentencing as party-opponent admissions pursuant to Rule 801(d)(2). Mot. Ad. Statements at 3. Ramos argues that these statements, which are contained in the government's sentencing memorandum for co-defendant Sharon Paiz, support Ramos's general theory of the case and his specific contention that he was not the source of the instant methamphetamine. Id. at 6-7. Ramos further argues that Paiz's unavailability for cross-examination at trial weighs in favor of admission, id. at 6, and that the statements are admissible even though they constitute opinion, id. at 7.

The government responds that the statement regarding Paiz being a "source of methamphetamine," while relevant, is admissible only after the government has taken an inconsistent position. Gov't's Opp'n to Mot. Admit Statements at 1 (citing U.S. v. Kattar, 840 F.2d 118 (1st Cir. 1988). Accordingly, the government argues that this statement should only be admitted if the government takes an inconsistent position regarding the methamphetamine's source. Id. at 3. Further, the government asserts that Ramos has not established the relevance of Paiz's abscondment. Id. at 2.

It does not appear that the government intends to argue that Ramos was the source of the methamphetamine supply. Moreover, since the government need not prove that Ramos was the source of the methamphetamine in order to establish that Ramos participated in a conspiracy to distribute at least fifty grams of methamphetamine in violation of 21 U.S.C. § § 841(a)(1) and (b)(1)(A)(viii), and that he actually distributed at least fifty grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii), it does not appear that this portion of the government's sentencing position memorandum is relevant at this stage of the proceedings.[7]

---

[7] In the event that the government argues that Ramos, and not Paiz, was the source of the methamphetamine supply, the Court will revisit this motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**"O"**

Similarly, at this stage in the proceedings the fact that co-defendant Paiz has absconded does not appear to have any bearing on Ramos's defense.  Accordingly, the Court DENIES defendant's motion without prejudice to being renewed at trial.

### C.    Defendant's Motion to Exclude Evidence of "Other Acts" Pursuant to Rules 401, 403, and 404(b)

On August 4, 2014, Ramos filed a motion to exclude evidence of "other acts" pursuant to Federal Rules of Evidence 401, 403, and 404(b).  Dkt. 137.  The government filed an opposition on August 11, 2014.  Dkt. 158.  The Court heard argument on August 25, 2014.  Dkt. 179.


The defense seeks to exclude evidence of certain statements made by Ramos to the government's CI pursuant to Rules 404(b) and 403.  Mot. Exc. Other Acts at 2.  Specifically, in a recorded conversation between Ramos and the CI, Ramos states that he was delivering "glass" on February 10, 2010.  Id. at 2-3.  Ramos states that he "anticipates the government to argue that "[s]ome glass" . . . refers to methamphetamine, and that Mr. Ramos was therefore telling the CI that he was out delivering methamphetamine."  Id. at 3.  Ramos contends that the statements should be excluded pursuant to Rule 404(b), since the government has not provided notice of its intent to introduce the statements at trial and, if the government did introduce the statements, the statements would amount to impermissible character evidence.  Id. at 6.  Alternately, Ramos argues that because the statements are generalized and only permit a generalized denial, the statements are only marginally probative and are likely to cause unfair prejudice by characterizing Ramos as an individual with a propensity to distribute drugs.  Id. at 7.[8]

In response, the government first contends that it provided notice to Ramos of its intent to use the recorded statements relating to the February 10, 2010 transaction when the government described those precise statements in the first overt act alleged in the indictment.  Id. at 3.  The government further contends that the underlying acts described in Ramos's statements to the CI are not 404(b) evidence; rather, the government asserts that the acts are "direct evidence of [Ramos's] guilt of Count One of the indictment," since they show his participation in the charged drug trafficking conspiracy.  Gov't's Opp'n Mot. Exc. Other Acts at 3-4.  Further,

---

[8] Ramos also argues that introduction of these statements would necessitate expert testimony regarding the definition of the term "glass" and objects to any such testimony the government may seek to elicit.  Id. at 7, n. 3.  The Court reserves judgment on this objection without prejudice to being renewed at trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**"O"**

should the Court find that the acts described in the statements are not "direct evidence" of the charged crime, the government contends that the described acts are nonetheless admissible because they are inextricably intertwined with the charged behavior. Id. at 6. In the alternative, the government asserts that the statements are admissible under Rule 404(b) to demonstrate "defendant's plan, knowledge, and absence of mistake or accident." Id. at 7. The government elaborated upon this alternative argument at hearing, asserting that the statements render it "reasonably foreseeable" that Ramos would know he was conspiring to distribute more than fifty grams of methamphetamine.

The Court finds that Ramos's recorded statements referring to the February 10, 2010 transaction do not constitute evidence of "other acts" within the meaning of Rule 404(b). Rule 404(b) provides that evidence of "other crimes, wrongs, or acts" is inadmissible to prove character or criminal propensity but is admissible for other purposes, such as proof of intent, plan, or knowledge. Fed. R. Evid. 404(b). "This rule is inapplicable, however, where the evidence the government seeks to introduce is directly related to, or inextricably intertwined with, the crime charged in the indictment." United States v. Lillard, 354 F.3d 850, 854 (9th Cir.2003). Moreover, "[t]he rule is well established that the government in a conspiracy case may submit proof on the full scope of the conspiracy; it is not limited in its proof to the overt acts alleged in the indictment." United States v. Rizk, 660 F.3d 1125, 1131 (9th Cir. 2011).

Here, the government has charged Ramos with conspiracy to distribute methamphetamine "beginning on an unknown date, and continuing to on or about February 12, 2010." Indictment at 1. Although the government has not charged Ramos with distribution of methamphetamine on February 10, 2010, at trial the government will be required to demonstrate that Ramos "joined in the agreement [to distribute methamphetamine] knowing of its purpose and intending to help accomplish that purpose." Ninth Circuit Model Jury Inst. 9.19 (2010 ed.). Ramos's statements that he was distributing "glass" on February 10, 2010 are direct evidence of defendant's knowledge of the conspiracy's purpose of distributing methamphetamine on February 12, 2010, as well as Ramos's intent to assist in accomplishing that purpose. See also United States v. Williams, 989 F.2d 1061, 1070 (9th Cir. 1993) (finding no abuse of discretion where district court admitted evidence of "uncharged transactions" that were "closely linked to" events charged in drug conspiracy).[9]

---

[9] Additionally, the defense's contention that the government has not provided the defense with notice of its intent to offer the evidence of Ramos's statements regarding the February 10, 2010 transaction at trial is without merit. The indictment expressly describes statements Ramos made to the CI, including Ramos's statements regarding the February 10, 2010 transaction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**"O"**

Alternatively, the Court finds that Ramos's statements describing the February 10, 2010 transaction are admissible as "other acts" pursuant to Rule 404(b), since they tend to show Ramos's knowledge that he was conspiring to distribute, and actually distributed, methamphetamine.  As discussed *supra*,  Rule 404(b) permits introduction of prior acts to "prov[e] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b).  The Ninth Circuit has "consistently held that evidence of a defendant's prior possession or sale of narcotics is relevant under Rule 404(b) to issues of intent, knowledge, motive, opportunity, and absence of mistake or accident in prosecutions for possession of, importation of, and intent to distribute narcotics."  United States v. Vo, 413 F.3d 1010, 1018 (9th Cir. 2005).  Such prior acts are admissible if "(1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged."  United States v. Vo, 413 F.3d 1010, 1018 (9th Cir. 2005).  Here, the defendant's knowledge is material to the crimes charged, see  21 U.S.C. § § 841(a), the prior drug transaction occurred merely two days before the conduct specifically charged in the indictment, the prior transaction is substantiated by Ramos's own statements, and the prior transaction—delivery of methamphetamine—is nearly identical to the two crimes charged in the indictment.

Further, the Court finds that introduction of this evidence at trial would not unfairly prejudice Ramos pursuant to Rule 403.  See Williams, 989 F.2d at (affirming admission of testimony regarding defendant's prior drug transactions "that fell outside the charged conspiracy" to distribute drugs and noting that any unfair prejudice was cured by "[t]he court issu[ing] a cautionary instruction that the jury could not consider the testimony as evidence of [defendant's] character to engage in drug dealing.").  Accordingly, the Court DENIES defendant's motion to exclude evidence of "other acts."

**D.     Defendant's Motion to Admit Expert Testimony Regarding the Dangers of Deportation to El Salvador for Known Confidential Informants**

On July 30, 2014, Ramos filed a motion to admit expert testimony regarding the dangers of deportation to El Salvador for known confidential informants pursuant to Federal Rule of Evidence 702.  Dkt. 149.  Should the Court admit the expert testimony, Ramos further requests an order specifying that such testimony does not permit the government to introduce evidence regarding Ramos's alleged affiliation with the 18th Street Gang.  Id.  The government filed an

---

Indictment at 2-3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**"O"**

opposition on August 14, 2014.  Dkt. 161.  The Court heard argument on August 25, 2014.
Dkt. 179.

Ramos seeks to introduce the testimony of Dr. Thomas J. Boerman, Ph.D., an expert in
criminal organizations active in Central America, regarding the significance of the immigration
benefits conferred by the government upon the CI—an apparent citizen of El Salvador who
entered the United States illegally—in exchange for the CI's testimony in the instant case, and
for the CI's testimony against alleged gang members in unrelated cases.  Mot. Admit Exp. Test.
at 3.  Citing Giglio v. United States, 405 U.S. 150 (1972), Ramos first contends that Boerman's
testimony is relevant to demonstrate the CI's "powerful motive to curry favor with the
government . . . because [the CI] faces torture and death if returned to El Salvador."  Id. at 6.
Further, Ramos contends that Boerman's expert testimony is admissible pursuant to Rule 702,
since organized crime is a proper subject of expert testimony and Boerman possesses sufficient
expertise in the relevant subject area, which is beyond the knowledge of the average juror.  Id.
at 6-7 (applying the three part test set forth in United States v. Finley, 301 F.3d 1000, 1007 (9th
Cir. 2002)).  Finally, should the Court admit Boerman's testimony, Ramos requests that the
Court preclude the government from introducing evidence related to Ramos's alleged gang
affiliation in response.  Id. at 9.

The government responds that Boerman's testimony is irrelevant, since Ramos has not
specifically alleged that the CI has a "motive to lie" due to receipt of immigration benefits, nor
has Ramos alleged that the CI is aware of the dangers of deportation to El Salvador.  Gov't's
Opp'n Mot. Admit Exp. Test. at 2-4.  Relatedly, the government requests that the Court issue an
order forbidding the defense from providing the CI "any information related to any organized
crime network in El Salvador."  Id. at 5.  Moreover, the government contends that evidence
related to Ramos's alleged gang affiliation should not be excluded, since it is relevant to
demonstrate, among other things, that Ramos had a motive to commit the charged crimes and to
demonstrate Ramos's connection to his co-conspirators and the CI.  Id. at 1-9.

Federal Rule of Evidence 702 provides that an expert may testify "in the form of an
opinion or otherwise" if his or her "specialized knowledge will assist the trier of fact to
understand the evidence or determine a fact in issue."  In Daubert v. Merrell Dow Pharm., Inc.,
509 U.S. 579, 589 (1993), the Supreme Court, in addressing admissibility of "scientific expert
evidence," held that FRE 702 imposes a "gatekeeping" obligation on the trial judge to "ensure
that any and all scientific testimony . . . is not only relevant, but reliable."  In Kumho Tire Co. v.
Carmichael, 526 U.S. 137 (1999), the Supreme Court "clarified that the gatekeeping function is
not limited to "scientific" expert testimony, but applies to all expert testimony."  United States
v. Hankey, 203 F.3d 1160, 1167 (9th Cir. 2000).  However, "[t]he Daubert factors were not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**"O"**

intended to be exhaustive nor to apply in every case." Id. at 1168.  Moreover, admissibility of expert opinion generally turns on preliminary questions of law determined by the trial judge, including *inter alia*,  whether the testimony is relevant and reliable, and whether its probative value is substantially outweighed by risk of unfair prejudice, confusion of issues, or undue consumption of time. Id. at 1168.

The Court finds that Boerman's proposed testimony is not relevant.  First, it is unclear if the CI will testify.  If the CI does not testify, it does not appear that Boerman's expert testimony could be relevant impeachment evidence.  Second, even if the CI does testify, the connection between retribution against "known confidential informants" in El Salvador and the CI is too tenuous.  Importantly, the defense has not set forth evidence indicating that the CI is a "known confidential informant."  Simply because known informants may face possible retribution in El Salvador—and the CI is originally from El Salvador—does not mean that this particular CI faces retribution in El Salvador if deported there.  Accordingly, the Court DENIES defendant's motion to admit Boerman's expert testimony.  However, the defense is not precluded from using evidence regarding immigration benefits conferred upon the CI to impeach the CI, should he testify at trial.

As a general matter, the Court does not consider defendant's gang affiliation to be relevant.  However, depending upon the evidence presented at trial, defendant's alleged gang affiliation might be become relevant.  Accordingly, the Court reserves judgment on the admissibility of evidence related to Ramos's alleged gang affiliation.

### E.     Defendant's Motion to Admit Evidence of Confidential Informant's Modus Operandi Pursuant to Rules 404(b) and 608(b)

On July 30, 2014, Ramos filed a motion to admit evidence of the confidential informant's modus operandi pursuant to Federal Rules of Evidence 404(b) and 608(b). Dkt. 150.  The government filed an opposition on August 5, 2014. Dkt. 139.  The Court heard argument on August 25, 2014.  Dkt. 179.

Pursuant to Rules 404(b) and 608(b), Ramos seeks to introduce the testimony of Jesus Ramon Valdez, Jr. regarding the CI's alleged modus operandi of "falsely implicating innocent persons in criminal activity, in exchange for financial rewards and immigration benefits."  Mot. Admit Evid. Mod. Op. at 4-5.  Specifically, Valdez will testify that in October 2010, the CI asked Valdez to falsely claim responsibility for possession of drugs that actually belonged to the CI. Id. at 4.  Ramos contends that the events described in Valdez's proposed testimony constitute "other acts" of the CI and thus are admissible under Rule 404(b) to impeach the CI should he testify. Id. at 6-8.  Ramos also contends that use of Valdez's testimony to impeach

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**"O"**

the CI falls within an exception to Rule 608(b)'s prohibition against admitting extrinsic evidence to prove specific instances of a witness's conduct, since Valdez's testimony serves to demonstrate the CI's bias, not to demonstrate that the CI is a "bad person" with a general character for untruthfulness. Id. at 9-11.

The government responds that Valdez's proposed testimony is not 404(b) evidence; rather, the government asserts that Valdez's testimony is impermissible extrinsic impeachment evidence that should be excluded pursuant to the Rule 608(b). Gov't's Opp'n Admit Evid. Mod. Op. at 5-6. The government argues that Valdez's testimony is also barred by Rule 607, since the testimony would only serve to contradict the CI on a collateral issue. Id. at 4 - 5.

The Court first notes that, because it is unclear whether the CI will testify at trial, Valdez's proposed testimony regarding the CI's alleged modus operandi may not be relevant. In any event, the Court finds that Valdez's proposed testimony regarding the CI's modus operandi is not Rule 404(b) evidence. Instead, the testimony is an impermissible attempt to use extrinsic evidence to demonstrate that the CI has a propensity to lie. Fed. R. 609(b) ("Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."). Accordingly, the Court DENIES defendant's motion to admit testimony regarding the CI's modus operandi.

## F.    Government's Motion to Preclude Impeachment Evidence Re: Informant

On July 28, 2014, the government filed a motion to preclude impeachment evidence regarding the government's confidential informant. Dkt. 125. Ramos responded on August 5, 2014. Dkt. 152. The Court heard argument on August 25, 2014. Dkt. 179.

Pursuant to Federal Rules of Evidence 608 and 403, the government seeks to preclude the introduction of evidence based on "unsupported facts" to impeach the CI. Mot. Prec. Impeach. Evid. at 1. Specifically, the government anticipates that Ramos will seek to introduce evidence that another confidential informant ("CI-2") accused the CI of possessing illicit firearms with the intent to commit robbery in August 2011; however, CI-2's accusations were found to be not credible when CI-2 was subjected to a polygraph examination by law enforcement. Id. at 1-2. The government first contends that the evidence cannot be used to cross examine the CI under Rule 608, because the evidence is not probative of the CI's character for truthfulness, as demonstrated by CI-2's failed polygraph examination. Id. at 3-4. Alternatively, the government argues that the probative value of the evidence is substantially outweighed by its potential to confuse jurors, and thus should be excluded pursuant to Rule 403. Id. at 4-5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**"O"**

In response, Ramos argues that the Ninth Circuit has found that polygraph examinations are not reliable, and therefore evidence of allegations by CI-2 against the CI are probative of the CI's character for truthfulness and are admissible during cross examination of the CI under Rule 608(b). Def.'s Opp'n Mot. Prec. Impeach. at 3-5. Ramos adds that this probative value is not outweighed by any unfair prejudice to the government and thus the evidence should not be excluded under Rule 403. Id. at 6.

At this juncture the Court is unable to determine the relevance, if any, of this evidence and thus reserves judgment on the government's motion.

**IV.  CONCLUSION**

In accordance with the foregoing, the government's motion for discovery and preclusion of evidence obtained in violation of the discovery agreement is DENIED. The government's motion to preclude evidence obtained in violation of Rule 17 is also DENIED. Ramos's motion in limine to exclude prior convictions is GRANTED with regard to the misdemeanor convictions and the 2012 assault conviction; the Court RESERVES judgment regarding the admissibility of Ramos's convictions for operation of a chop shop, grand theft, and receipt of stolen property. Ramos's motion to admit statements made by the government regarding co-defendant Sharon Paiz is DENIED without prejudice to being renewed at trial. Ramos's motion in limine to exclude evidence of "other acts" is DENIED; the Court RESERVES judgment with regard to Ramos's objection to the introduction of expert testimony regarding the meaning of the term "glass." Ramos's motion to admit expert testimony regarding the dangers of deportation to El Salvador for known confidential informants is DENIED. Ramos's motion to admit evidence of the confidential informants modus operandi is DENIED. The Court RESERVES judgment on the government's motion in limine to exclude the specific impeachment evidence discussed in this order regarding the confidential informant.

IT IS SO ORDERED.

|  | 00 | : | 00 |

Initials of Deputy Clerk          CMJ