UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**'O'**

| Case No. | CR13-00403(A)-CAS | | Date | August 10, 2015 |
|---|---|---|---|---|

| Present: The Honorable | CHRISTINA A. SNYDER |
|---|---|

| Interpreter | N/A |
|---|---|

| CATHERINE JEANG | LAURA ELIAS | JEFF MITCHELL |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| AARON RAMOS | X | X | | ALYSSA BELL, DFPD | X | X | |

**Proceedings:**

GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT GANG EVIDENCE (Dkt. 286, filed June 23, 2015)

DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY (Dkt. 285, filed June 22, 2015)

DEFENDANT'S MOTION TO DISMISS MULTIPLICITOUS COUNTS OF THE FIRST SUPERSEDING INDICTMENT (Dkt. 304, filed July 9, 2015)

## I.    INTRODUCTION AND BACKGROUND

In February 2013, a grand jury charged defendants Aaron Ramos and Sharon Paiz with one count of conspiracy to distribute at least fifty grams of methamphetamine in violation of 21 U.S.C. § § 841(a)(1) and (b)(1)(A)(viii) (count one), as well as one count of distribution of at least fifty grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) (count two).  Id.  Following a five day trial, a jury found defendant Ramos guilty of both counts on September 30, 2014.  Dkt. 120.[1]

Defendant subsequently filed a motion for a new trial, arguing that the Court failed to respond adequately to juror questions, improperly questioned a doubtful juror concerning his verdict, and failed to provide defendant's preferred conspiracy instruction to the jury.  Dkt. 253. By order dated March 16, 2015, the Court granted defendant's motion for a new trial on the

---

[1] Defendant Paiz entered a guilty plea on March 25, 2014.  Dkt. 76.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**'O'**

exclusive ground that the juror's statements could be understood as an expression of doubt and may possibly have undermined the unanimity of the verdict.  Id.

On June 30, 2015, the government filed a First Superseding Indictment ("Superseding Indictment") consisting of three counts.  Count One charges defendant with conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 846, as alleged in the Original Indictment; Count Two charges defendant with attempt to knowingly and intentionally distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C); and, Count Three charges defendant with distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).  Specifically, Count One alleges that the conspiracy to distribute methamphetamine began on an unknown date and continued to on or about February 12, 2010.  According to the Superseding Indictment, Ramos would identify customers, Ramos and Paiz would agree to sell methamphetamine to these customers, and Paiz would obtain and deliver the methamphetamine to customers, sharing the proceeds with Ramos.  Count Two charges Ramos with attempting to distribute methamphetamine on February 12, 2010, and Count Three charges Ramos with actually distributing methamphetamine on that same date.[2]

Trial in this matter is scheduled for December 8, 2015.  On August 10, 2015, the Court held a hearing on the parties' various pre-trial motions.  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.   GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT GANG EVIDENCE

On June 23, 2015, the government filed the instant motion *in limine* to admit evidence of defendant's alleged membership in the 18th Street Gang.  Dkt. 286.  Defendant opposed this motion on June 29, 2015.  Dkt. 290.

The government contends that, based on arguments proffered by defendant during the first trial, evidence of defendant's gang membership is relevant to and probative of his participation in the charged conspiracy.  Mot. Lim. at 6.  Specifically, defendant argued at trial that co-defendant Paiz acted independently to complete the charged sale of methamphetamine on February 12, 2010, and that his presence during that sale—which occurred at Ramos' mother's residence—was not the result of coordination.  Id., Ex. B (Trial Transcript) at 124-25.  Rather, defendant asserted that, at the time, co-defendant Paiz was involved in a romantic

---

[2] With the exception of the addition of a charge for attempted distribution of methamphetamine on February 12, 2010, the Superseding Indictment is nearly identical to the Original Indictment.  Compare Dkt. 1, with Dkt. 297.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

relationship with an individual known as "Laughing Boy," who rented a converted garage from Ramos' mother. Id. In essence, Ramos argued that Paiz was an independent actor, who just happened to be at defendant's residence during the charged drug deal, and who opportunistically took control of that deal with her own source of supply. Id. at 124-131.

Anticipating that Ramos will once again proffer this argument at trial, the government asserts that evidence of Ramos and Paiz's membership in the 18th Street gang is relevant to show Ramos' relationship and connection to Paiz, as well as Ramos' "authority" within the gang. To make this showing, the government seeks to introduce the following evidence: (1) a video recorded statement made by Ramos to state authorities in 2012 in which he states he has been "associating" with the 18th Street gang since he was 13 and has been "running with the gang" since he was 17; and (2) portions of two recorded phone calls between Ramos and a confidential informant ("CI"), in which they discuss a meeting called by the "Baby Locas," a clique within the 18th Street gang. Mot. Lim. at 7. The government asserts that the former proves Ramos is a member of the 18th Street gang, and the latter shows that defendant has the "ability to coordinate a gang meeting," which tends to refute defendant's assertion that Paiz "took control of" his drug deal. Id. In opposition, defendant argues that the proposed evidence is inadmissible under Federal Rules of Evidence 401 and 403.

Evidence is relevant if it has any tendency to make a fact of consequences more or less probable than it would be without the evidence. Fed. R. Evid. 401. Even where evidence is relevant, however, it may nonetheless be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." United States v. Curtin, 489 F.3d 935, 963 (9th Cir. 2007). As the Ninth Circuit has noted, "[admission of] evidence relating to gang involvement will almost always be prejudicial and will constitute reversible error. Evidence of gang membership may not be introduced . . . to prove intent or culpability." Kennedy v. Lockyer, 379 F.3d 1041, 1055 (9th Cir. 2004).[3]

---

[3] The government characterizes this statement as "mere dicta." In Kennedy, the court granted *habeas* relief to a state prisoner. During defendant Kennedy's first trial, his lawyer successfully moved to exclude evidence of gang membership, which the prosecution sought to introduce to prove the relationship between Kennedy and his co-defendant. 379 F.3d at 1043. The first trial ended in a hung jury. Id. at 1042. Before his second trial, in which Kennedy was represented by new counsel, he twice requested a complete transcript of his first trial—including the pre-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

'O'

The Court concludes that the government's proffered evidence has, at best, minimal probative value, and, in any event, its probative value is substantially outweighed by both the risk of unfair prejudice to defendant as well as the undue consumption of time.  As to the video evidence, Ramos' statements concerning his alleged gang affiliation in 2012 are only minimally probative of his alleged affiliation in 2010, when the charged activity allegedly occurred.  More importantly, the evidence sheds no light on Ramos' relationship with Paiz.  Further, although the government asserts that it is willing to "work with defendant to minimize any unfair prejudicial impact," Mot. Lim. at 9, the admission of a video showing defendant being questioned by law enforcement in connection with an entirely separate incident is highly prejudicial.  As the defense accurately points out, "[t]his evidence invites the jury to speculate about what other crimes Mr. Ramos has committed, and thus has the practical effect of introducing an otherwise inadmissible prior conviction in the government's case in chief." Opp'n Mot. Lim. at 11.  See United States v. Lewis, 787 F.2d 1318, 1323 (9th Cir.) opinion amended on denial of reh'g, 798 F.2d 1250 (9th Cir. 1986) ("To tell a jury to ignore the defendant's prior convictions in determining whether he or she committed the offense being tried is to ask human beings to act with a measure of dispassion and exactitude well beyond mortal capacities." (internal quotation omitted)).

With regard to the phone conversations, the Court has reviewed the proffered transcripts and, contrary to the government's assertion, they do not tend to show that Ramos occupied a

---

trial motions and rulings thereon.  Id. at 1043.  The state court, however, refused the request, granting Kennedy access only to the portion of the transcript containing witness testimony.  Id. During his second trial, "[a]ware that the new attorney did not have the full transcript, the state introduced evidence intended to show gang involvement on Kennedy's part—evidence that had been excluded from the first trial after a successful pre-trial motion to suppress."  Id. Concluding that the state's failure to provide Kennedy a full trial transcript "had a substantial and injurious effect on the jury's verdict," id. at 1054, the Ninth Circuit expressly reasoned that "the prosecution took advantage of Kennedy's counsel's lack of knowledge regarding the *prior trial court order prohibiting gang testimony in order to introduce the prejudicial testimony* in the second trial," id. at 1055 (emphasis added).  Indeed, the court stated that, if Kennedy's counsel had been given access to the relevant portions of the first trial's transcripts, "we have little doubt that Kennedy's counsel in the second trial would have presented a similar motion [to exclude gang evidence] with a substantial likelihood of success."  Id.  Thus, contrary to the government's position, the Kennedy court's statements concerning the prejudicial impact of gang evidence and its inadmissibility to prove intent and culpability were central to that court's holding.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**'O'**

position of authority relative to co-defendant Paiz in the 18th Street gang.  See Opp'n Mot. Lim., Ex. A (Government's Transcript of Call 672).  By way of background, the government alleges that Ramos is a member of the Los Players clique of the 18th Street gang, and Paiz is a member of the Baby Locas clique of the 18th Street gang.  Dkt. 249 (Presentence Investigation Report) at 6, n.3.  Here, the transcripts appear to show that the CI viewed both his and Ramos' attendance at a meeting called by the Baby Locas clique as mandatory, see id. at 22 ("if Loca calling up a meeting like that, it's gonna be a mando thing"), contradicting the government's position that Ramos possessed authority over Paiz.  Indeed, the transcripts raise more questions than they answer.  To render this evidence probative, the Court would need to determine the relationship between the two cliques within the organizational structure of the 18th Street gang, as well as the respective positions of authority occupied by Ramos and Paiz therein.  Such a mini-trial would waste time and distract the jury from the charges at issue.  See United States v. Waters, 627 F.3d 345, 353 (9th Cir. 2010) (finding no abuse of discretion where trial court excluded evidence that "ran the risk of creating a mini-trial").

The cases relied upon by the government do not compel a different result.  Although it is certainly true that evidence of gang membership may be probative of the relationship between co-conspirators, see, e.g., United States v. Jones, 346 F. App'x 253, 257 (9th Cir. 2009), the government simply has not demonstrated that—in the instant case—the probative value of its proffered evidence is not outweighed by its prejudicial effect.  Accordingly, the Court DENIES the government's motion to admit evidence of defendant's gang affiliation.[4]

## III.   DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY

On June 22, 2015, defendant filed the instant motion to exclude the testimony of Los Angeles Police Department ("LAPD") Officer Charles Derosier, the government's narcotics trafficking expert.  Dkt. 285.  The government opposed the motion on June 29, 2015.  Dkt. 291.

Officer Derosier has been employed as a police officer by the LAPD since 1999 and possesses ample experience and training related to narcotics investigations.  See Opp'n Mot. Exclude, Ex. G (May 22, 2015 Expert Disclosure).  He has received over three hundred hours of academic training from the LAPD and California Narcotics Officer Association with regard to possession, use, packaging, and sales of cocaine, rock cocaine, methamphetamine, marijuana, PCP, heroin, and various other controlled substances.  Id.  He has made hundreds of narcotics

---

[4] Defendant also argues that, through the instant motion, the government improperly asks the Court to reconsider its prior ruling excluding evidence of gang affiliation.  Opp'n Mot. Lim. at 3.  In light of Court's analysis under Rules 401 and 403, however, it need not reach this issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

'O'

related arrests, and, for the last six years, he has been assigned full-time as a Task Force Officer with the Department of Homeland Security Narcotics Group / Bulk Cash Smuggling Group.  Id. Through these experiences, he has become familiar with, among other things, coded communications and conversations employed by narcotics traffickers.  Id.  Consequently, Officer Derosier has testified in both Superior Court and Federal Court as an expert in the area of sales and possession of controlled substances, such as marijuana, methamphetamine, and heroin.  Id.

By way of background, Officer Derosier did not testify during the first trial.  Instead, the parties stipulated that, with regard to certain recorded phone calls involving defendant, "the words 'glass' and 'crystal' are used to refer to methamphetamine."  Opp'n Mot. Exclude, Ex. E; dkt. 291-5.  Although the government initially requested a stipulation stating that these words are used "by narcotic traffickers," defendant objected to such language, and the government agreed to exclude it.  Opp'n Mot. Exclude, Ex. C.  The government, however, has declined to stipulate to the meaning of any drug terminology in the new trial.

In the instant motion, defendant asserts that Officer Derosier's testimony should be excluded for three reasons: (1) the government's expert disclosures were inadequate, since they did not contain a written summary "describ[ing] the witness's opinions, [and] the bases and reasons for those opinions," as required by Federal Rule of Criminal Procedure 16(a)(1)(G); (2) the testimony will not be helpful to the jury, as required by Federal Rule of Evidence 702; and (3) the testimony creates a risk of prejudice to defendant that substantially outweighs its probative value, requiring exclusion under Rule 403.  Mot. Exclude at 5-11.  Should the Court admit the expert's testimony, defendant requests a hearing under Daubert v. Merrell Dow Pharm. Inc., 509 U.S. 579 (1993).  Id. at 12.

Federal Rule of Evidence 702 provides that an expert may testify "in the form of an opinion or otherwise" if his or her "specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue."  In Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993), the Supreme Court, in addressing admissibility of "scientific expert evidence," held that FRE 702 imposes a "gatekeeping" obligation on the trial judge to "ensure that any and all scientific testimony . . . is not only relevant, but reliable."  In Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), the Supreme Court "clarified that the gatekeeping function is not limited to "scientific" expert testimony, but applies to all expert testimony."  United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir. 2000).  However, "[t]he Daubert factors were not intended to be exhaustive nor to apply in every case."  Id. at 1168.  Moreover, admissibility of expert opinion generally turns on preliminary questions of law determined by the trial judge, including *inter alia*, whether the testimony is relevant and reliable, and whether its probative

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**'O'**

value is substantially outweighed by risk of unfair prejudice, confusion of issues, or undue consumption of time.  Id. at 1168.

Under Rule 16, a party requesting an expert disclosure "is entitled to a summary of the expected testimony," which "permit[s] more complete pretrial preparation."  Fed. R. Crim. P. 16, 1993 amend. advisory committee's notes.  In determining the adequacy of an expert disclosure, the inquiry focuses on whether the substance of the disclosure provides the opposing party "with a fair opportunity to test the merit of the expert's testimony through focused cross-examination."  United States v. Mendoza-Paz, 286 F.3d 1104, 1111 (9th Cir. 2002) (quoting Fed. R. Crim. P. 16, 1993 amend. advisory committee's note.).  Moreover, absent demonstrated prejudice, the remedy for a violation of Rule 16 is not necessarily exclusion of testimony.  Id.

In the instant case, the government disclosed the substance of Officer Dorosier's testimony as follows: "Officer Dorosier will testify to coded language used by narcotic traffickers, including terms such as Glass, Crystal, Jale, and Tweaking, and offer his opinion on the nature of the coded language in the recording in this case."  Opp'n, Ex. G (May 22, 2015 disclosure).  Under Rule 16, defendant objects to the vagueness of the term "nature," and also asserts that "[i]t is unclear whether [t]his testimony will simply define certain terms, such as crystal and glass . . . or whether [Officer Dorosier ] will . . . opine that only narcotics traffickers use certain terms or imbue those terms with a particular, undisclosed meaning."  Mot. Lim. at 7.

Defendant's latter concern is misplaced.  The disclosures make clear that Officer Derosier will testify to the meaning of certain drug terminology and opine that, in his experience, this terminology is used by narcotics traffickers.[5]  Moreover, evidence suggesting that defendant is conversant in coded language used by drug traffickers is plainly relevant to proof of the drug trafficking charges at issue in this case, and will "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a); see, e.g., United States v. Vera, 770 F.3d 1232, 1241 (9th Cir. 2014) ("Drug jargon is well established as an appropriate subject for expert testimony[.]"); United States v. Freeman, 498 F.3d 893, 901 (9th Cir. 2007) (affirming admission of expert "interpretation of encoded drug jargon," including terms such as "iggity," "ticket," and "all gravy," and explaining that "[d]rug jargon is a specialized body of knowledge, familiar only to those wise in the ways of the drug trade, and therefore a fit subject for expert testimony." (internal quotation and citation omitted)).  Further, Officer Derosier's extensive experience and training in the area of drug sales, including sales of

---

[5] To the extent that defendant is concerned that Officer Derosier will testify that such jargon is used *exclusively* by drug traffickers, Mot. Lim. at 3, this is an appropriate subject for cross-examination.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

**'O'**

methamphetamine, renders him qualified to explain the meaning of jargon used in connection with the charged methamphetamine conspiracy.  See Freeman, 498 F.3d at 901, n.1 (finding drug jargon expert qualified where expert had been a police officer for eleven years, "with more than four years of experience as a narcotics detective").

Lastly, defendant's contention that the foregoing testimony lacks probative value because the drug jargon at issue was used during a phone call recorded on February 10, 2010—rather than during the charged February 12, 2010 drug transaction—is without merit.  As the Court has previously concluded, Ramos' February 10, 2010 recorded statements are probative of his knowledge of the alleged conspiracy.  Dkt. 206 at 13-15 (denying defendant's motion to exclude February 10, 2010 recorded statements).  Moreover, contrary to defendant's assertion, that the jury may ascribe great weight to Officer Derosier's testimony simply because he is a police officer does not create a risk of unfair prejudice to defendant that substantially outweighs the probative value of the proffered testimony.  See Fed. R. Evid. 403.

However, the Court agrees with defendant that the government's expert disclosure does not elucidate the substance of Officer Derosier's "opinion on the *nature* of the coded language," id. (emphasis added).[6]  The government resists this conclusion, and points to certain advisory committee notes to Rule 702, which provide that "when a law enforcement agent testifies regarding the use of code words in a drug transaction, the principle used by the agent is that

---

[6] The government maintains that this notice is adequate, and points out that it also provided defendant with expert disclosures on Officer Derosier in preparation for the first trial.  In the first disclosure, the government stated that it would call Special Agent Gustavo Lopez to "testify that methamphetamine sometimes looks like glass, and that he has heard the term 'glass' used to describe methamphetamine in other [narcotics] investigations."  Opp'n, Ex. A (September 5, 2014 Disclosure).  The government further stated that SA Lopez "may testify to the prices of methamphetamine purchased from other defendants during this same investigation, and who are mentioned during the recorded calls with Mr. Ramos."  Id.  The government explained that it did not believe "this testimony requires an expert witness," but indicated that "the government is prepared to call Charles Derosier as an expert witness."  Id.   Defense counsel subsequently requested clarification regarding the subject of Officer Derosier's proposed testimony, to which the government responded: "[T]he government's position is that we do not need to identify each specific coded word that our drug expert will explain during his testimony. However, . . . I expect Officer Derosier to explain coded words such as: Glass, Crystal, Jale, and Tweaking."  Id., Ex. D (September 19, 2014 Supplemental Disclosures).  Nothing in these disclosures elucidates the content of Officer Derosier's proposed "opinion on the nature of the coded language in the recording in this case."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

participants in such transactions regularly use code words to conceal the *nature* of their activities." Fed. R. Evid. 702, 2000 amend. advisory committee's note (emphasis added). This excerpt, however, does not explain the *specific* opinion Officer Derosier intends to offer in the instant case. For example, the Court cannot discern whether Officer Derosier's opinion will "touch[] on matters far afield from the interpretation of encoded drug jargon . . . [by] offer[ing] interpretations of ambiguous conversations that d[o] not consist of coded terms at all." Freeman, 498 F.3d at 902. Indeed, at side bar during the first trial on this matter, the Court cautioned that government witnesses would not be permitted to "invad[e] the province of the jury [by] testifying that [Mr. Ramos] is a drug dealer and that this is what the [recorded February 10, 2010] conversation effects." Dkt. 278 (Sept. 23, 2014 Transcript of Proceedings) at 39-40. At bottom, absent an explanation of Officer Derosier's "nature" opinion, the Court cannot conclude that the opinion is reliable, relevant, or helpful to the jury under Rule 702.

Accordingly, defendant's motion to exclude the expert testimony is GRANTED in part and DENIED in part.[7] Specifically, Officer Derosier may testify to the meaning of the coded drug terminology listed in the expert disclosures, and to the fact that such terms are used by traffickers. However, Officer Derosier may not proffer an opinion concerning the "nature of the coded language in the recording in this case." In light of the foregoing, defendant's request for a Daubert hearing is DENIED.

## IV.   DEFENDANT'S MOTION TO DISMISS MULTIPLICITOUS COUNTS OF THE FIRST SUPERSEDING INDICTMENT

On July 9, 2015, defendant filed the instant motion to dismiss multiplicitous counts of the Superseding Indictment. Dkt. 304. The government opposed the motion on July 14, 2015, dkt. 306, defendant replied on July 15, 2015, dkt. 307, and, with leave of the Court, the government filed a sur-reply on August 5, 2015, dkt. 320.

As noted above, the Superseding Indictment charges defendant with conspiracy to distribute methamphetamine (count one), attempted sale of methamphetamine on February 12, 2010 (count two), and sale of methamphetamine on February 12, 2010 (count three). Dkt. 297. With the exception of the addition of the second count for attempted distribution, the Superseding Indictment is nearly identical to the Original Indictment. Compare Dkt. 1, with Dkt. 297.

---

[7] The Court reserves judgment on the question of whether defendant should be permitted to conduct voir dire before Officer Derosier may testify at trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

Defendant contends that, because Count Three is duplicative of Count Two under the test enumerated in Blockburger v. United States, 284 U.S. 299 (1932), one of these counts must be dismissed to avoid Fifth Amendment double jeopardy concerns. Mot. Dismiss. at 5.[8] In response, the government "recognizes that attempt crimes are typically lesser included offenses of completed crimes, and defendant is correct that he cannot be sentenced on both greater and lesser included offenses," but asserts that the remedy of dismissal is inappropriate. Opp'n at 1. Rather, the government contends that Double Jeopardy Clause concerns are implicated solely where a criminal defendant is *sentenced* for multiplicitous counts, not where the government *prosecutes* multiplicitous counts. Id. at 1-3.

Alternatively, the government argues that counts two and three are predicated on two distinct transactions, both of which occurred on February 12, 2010, and thus Blockburger is not implicated. Opp'n at 7. According to the government:

> During the first trial, defendant argued that the evidence showed that there were two attempts at selling drugs to the informant on February 12, 2010. Defendant argued that his attempt to sell drugs to the CI failed, but Sharon Paiz took charge of the situation and sold her own drugs to the CI. In effect, defendant argued that there were two transactions that day.

Id. The government asserts that, because the prohibition against convicting a defendant for both a lesser and greater included offense only applies where the two charges are based on the same *conduct*, the jury should be permitted to determine whether the attempted sale charge is predicated on distinct conduct from the sale charge, obviating the need for multiplicity analysis under Blockburger.

In reply, defendant argues that the multiplicity analysis should focus upon the statutory elements of the alleged lesser and greater offenses, rather than what was argued by counsel during the first trial. Reply at 4. Alternatively, defendant contends that, "to the extent the government seeks to present its novel [two transaction] theory to the jury," the theory is tantamount to an impermissible amendment to the Superseding Indictment that runs afoul of the statute of limitations. Id. at 4-5. Although defendant acknowledges that, typically, the return of an indictment tolls the statute of limitations with respect to charges contained in the indictment, United States v. Pacheco, 912 F.2d 297, 305 (9th Cir. 1990) (citations omitted), defendant

---

[8] The Fifth Amendment to the United States Constitution provides, in pertinent part, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

asserts that the Superseding Indictment broadened or substantially amended the Original
Indictment, and thus the attempt charge in Count Two of the Superseding Indictment does not
relate back for purposes of tolling, id. ("if the counts in the superseding indictment 'broaden[ed]
or substantially amend[ed]' the charges in the original indictment, the statute of limitations
would not have been tolled as to those charges.") (quoting United States v. Sears, Roebuck Co.,
Inc., 785 F.2d 777, 778-79 (9th Cir. 1986)).  The government responds that Count Two is not
time-barred, because the Superseding Indictment does not rely on any new evidence of
allegations and thus did not broaden or substantially amend the charges contained in the
Original Indictment.  Sur-Reply at 1.

First, the Court concludes that the Superseding Indictment did not broaden or
substantially amend the charges in the Original Indictment and, accordingly, Count Two of the
Superseding Indictment is timely.  "To determine whether a superseding indictment
substantially broadens or amends a pending timely indictment, . . . it is appropriate to consider
'whether the additional pleadings allege violations of a different statute, contain different
elements, rely on different evidence, or expose the defendant to a potentially greater sentence.'
"  United States v. Liu, 731 F.3d 982, 996-97 (9th Cir. 2013) (quoting United States v. Yielding,
657 F.3d 688, 704 (8th Cir. 2011)).  However, "[t]he central concern in determining whether the
counts in a superseding indictment should be tolled based on similar counts included in the
earlier indictment is notice."  Id. at 997.  "If the allegations and charges are substantially the
same in the old and new indictments, the assumption is that the defendant has been placed on
notice of the charges against him. That is, he knows that he will be called to account for certain
activities and should prepare a defense."  Id. (quoting Pacheco, 912 F.2d at 305).

In the instant case, the Superseding Indictment is nearly identical to the Original
Indictment.  Indeed, with the exception of the addition of Count Two and the exclusion of
allegations regarding the specific quantity of methamphetamine allegedly distributed—i.e., "at
least 50 grams," Original Indict. at 2—the Superseding Indictment repeats the allegations in the
Original Indictment nearly verbatim.  Both allege that defendant Ramos would identify
methamphetamine customers, defendant Paiz would obtain the methamphetamine from a
supplier, Paiz would deliver the methamphetamine to customers identified by Ramos, and Paiz
and Ramos would split the profits from the methamphetamine sales.  Original Indict. at 2, ¶¶
B(1)-(3); Super. Indict. at 2, ¶¶ B(1)-(3).  Both allege that Ramos spoke with a CI by telephone
on February 10, 2010, promised the CI he could obtain two ounces of methamphetamine for
him, agreed to meet the CI on February 12, 2010 with the methamphetamine, and subsequently
told the CI by telephone on February 12, 2010 to "hurry up" so that the transaction could be
completed.  Original Indict. at 2-3, ¶¶ C(1)-(4); Super. Indict. at 2-3, ¶¶ C(1)-(4).  Both allege
that Ramos met the CI at Ramos' residence on February 12, 2010, that Ramos then instructed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**'O'**

Paiz to drive to another location to obtain the methamphetamine for the CI, that Paiz followed these instructions and returned with the methamphetamine, that Paiz then used a scale to measure the precise quantity of methamphetamine and, finally, that Ramos sold the methamphetamine to the CI in exchange for $2,500 on February 12, 2010.   Original Indict. at 3-4, ¶¶ C(5)0(8); Super. Indict. at 3-4, ¶¶ C(5)-(8).  Moreover, the Superseding Indictment alleges that the attempted sale (Count Two) and the completed sale (Count Three) occurred "on or about February 12, 2010," Super. Indict. at 5-6—just as the Original Indictment alleged that the completed sale (Count Two) occurred "on or about February 12, 2010," Original Indict. at 5.

Defendant concedes that Count Two of the Superseding Indictment is timely "*only if* it relies upon the same factual allegations as Counts One and Three, and does not require Mr. Ramos to conduct new investigation and prepare new evidence in his defense."  Reply at 5-6 (emphasis in original).  As the foregoing comparison of the two indictments makes clear, Count Two relies on the same factual allegations as Counts One and Three.  Moreover, defense counsel's acknowledgment that its own "rhetorical arguments during opening statements in the first trial," Reply at 4, generated the instant dispute regarding the attempt charge belies any contention that  defendant is not on notice of the facts underlying that charge.  Simply put, defendant's contention that "[i]t is unclear . . . what facts the government relies upon to assert that there was a separate deal on February 12, 2010, let alone one that Mr. Ramos took a substantial step toward completing," falls flat.

Turning to the substance of the instant motion, the Court declines to dismiss either Count Two or Count Three at this stage.  As explained above, the Superseding Indictment alleges no new conduct.  Moreover, the parties agree—and the Court concludes—that an attempted sale of methamphetamine (Count Two) is a lesser included offense of a completed sale of methamphetamine (Count Three).  See Ljutica v. Holder, 588 F.3d 119, 125 (2d Cir. 2009) ("Because an attempt to commit a substantive crime is a lesser included offense of that substantive crime, the facts that support a conviction for the completed crime also support a conviction for attempt.").  Although the defense is correct that the Court may order the government to elect between Counts Two and Three pursuant to Federal Rule of Criminal Procedure 14, see United States v. Aguilar, 756 F.2d 1418, 1423 (9th Cir. 1985) (quoting Fed. R. Crim. P. 14), the Court declines to do so here.  As the Ninth Circuit has explained,

> "The chief danger raised by a multiplicitous indictment is the possibility that the defendant will receive more than one sentence for a single offense." United States v. Galvan, 949 F.2d 777, 781 (5th Cir. 1991) (internal citations omitted).  By dismissing two of the three [multiplicitous] counts before sentencing, the district court ensured that [defendant] did not face more than one sentence for the felony possession convictions. While a new trial might theoretically be available as a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CRIMINAL MINUTES - GENERAL

'O'

remedy in circumstances like these—where the jury considered a multiplicitous indictment but the defendant was sentenced under only one of the convictions—we have rejected such a remedy where "the [G]overnment would have introduced exactly the same evidence had the indictment contained only one count" of the charged offense.  United States v. Nash, 115 F.3d 1431, 1438 (9th Cir. 1997), cert. denied, 522 U.S. 1117, 118 S. Ct. 1054, 140 L.Ed.2d 117 (1998). This case is easily resolved under the Nash rule, since the Government would have presented evidence concerning all three guns, no matter how the possession charge was packaged in the indictment.

United States v. Matthews, 240 F.3d 806, 818 (9th Cir. 2000) on reh'g en banc, 278 F.3d 880 (9th Cir. 2002), overruling on other grounds recognized by, United States v. Gonzalez, 226 F. App'x 700, 701 (9th Cir. 2007).

This case is likewise "easily resolved" under the Nash rule since, as indicated by the nearly identical indictments, the government will rely on the same evidence to prove Counts Two and Three of the Superseding Indictment.  Moreover, the government has now represented in both its opposition and sur-reply that, if a jury convicts defendant on both Counts Two and Three, it intends to dismiss one count to avoid the double jeopardy concerns implicated where more than one sentence is imposed for a single offense.  See Matthews, 240 F.3d at 818.

Accordingly, the Court DENIES without prejudice defendant's motion to dismiss multiplicitous counts of the first superseding indictment.

## V.   CONCLUSION

In accordance with the foregoing, the Court DENIES the government's motion to admit evidence of defendant's gang affiliation.

Defendant's motion to exclude the expert testimony is GRANTED in part and DENIED in part.  Specifically, Officer Derosier may testify to the meaning of the coded drug terminology listed in the expert disclosures, and to the fact that such terms are used by traffickers.  However, Officer Derosier may not proffer an opinion concerning the "nature of the coded language in the recording in this case."  Additionally, defendant's request for a Daubert hearing is DENIED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

**'O'**

The Court DENIES without prejudice defendant's motion to dismiss multiplicitous counts of the first superseding indictment.

IT IS SO ORDERED.

| 00 | : | 21 |
|---|---|---|

Initials of Deputy Clerk         CMJ