O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 2:19-cv-08025-CAS |
| | ) | Case No. 2:13-cr-00403-CAS - 1 |
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| | ) | |
| AARON RAMOS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I. INTRODUCTION AND BACKGROUND

Presently before the Court is defendant Aaron Ramos' ("Ramos") "Statement of Facts and Memorandum of Points and Authorities in Support of Petition for Writ of Habeas Corpus; Discovery and an Evidentiary Hearing Requested." Dkt 448-1 ("Mot.").[1] The government filed an opposition on October 17, 2019. Dkt 451 ("Opp."). Ramos filed a reply on November 18, 2019. Dkt. 452 ("Reply").

---

[1] Unless specified otherwise, all docket references are to the docket in <u>United States of America v. Aaron Ramos</u>, No. 2:13-cr-00403 (C.D. Cal.). The habeas petition is directed to the retrial of this matter described below.

-1-

On June 4, 2013, a grand jury returned an indictment charging Ramos and Sharon Paiz ("Paiz") with two criminal counts: (1) conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846; and (2) distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A)(viii). Dkt. 1. The government and Paiz reached a plea agreement on March 14, 2014, and Paiz formally entered a guilty plea on March 25, 2014. Dkt. 69, 76.

Ramos proceeded to trial on September 23, 2014. Dkt. 220. Following a five-day trial, the jury convicted Ramos on both counts. Dkt. 228. Ramos filed a motion for a new trial on February 3, 2015. Dkt. 253. The Court granted Ramos' motion on March 16, 2015, determining that because of statements expressed by a juror during post-verdict polling, "the Court cannot state with certainty that the jury's verdict was unanimous[.]" Dkt. 269 at 10. A grand jury returned a first superseding indictment on June 30, 2015, charging Ramos with an additional count for attempted distribution of methamphetamine. Dkt. 297.

Ramos' retrial began on December 1, 2015. Dkt. 336. At the retrial, the government introduced the transcripts of telephone conversations between Ramos and a confidential informant ("the informant").[2] During a February 10, 2010 call, Ramos and the informant discussed "glass," a term commonly used to refer to methamphetamine. See Dkt. 451, Exhibit A ("Ex. A"). According to the government's transcript, in a conversation later that day, Ramos notified the informant that Ramos had methamphetamine "on Deck." Id. at 534. In a conversation on February 11, 2010, the informant and Ramos agreed to meet on February 12, 2010, at the residence where Ramos lived, to discuss a sale of methamphetamine. Id. at 565. A third-party supplier was to provide the narcotics, while the government's case agent, operating as a financier, was to provide the funding for the

---

[2] During these telephone conversations, the informant and Ramos speak in both the English and Spanish languages. Accordingly, the government's transcripts, introduced at both Ramos' trial and retrial, include English translations where applicable. Ramos did not contest the government's transcriptions and translations of these calls. See Opp. at 3.

-2-

transaction to the informant. Opp. at 2. In a phone call ten minutes before the scheduled meeting, Ramos told the informant not to be late because "I can't be having these people waiting on [the informant]." Ex. A at 571–572.

The government and Ramos agree that, prior to arriving to the scheduled meeting, the informant was equipped with a recording device. Mot. at 2; Opp. at 2. When the informant arrived at the scheduled meeting, the recording device initially captured both audio and video. Mot. at 2; Opp. at 2. After some twenty minutes, the recording device stopped capturing video but continued recording audio. Mot. at 2; Opp. at 2.

During the retrial, the parties offered competing transcripts (and, where applicable, English translations) of the recording captured by the informant's recording device. The parties agreed that the video portion of the recording showed that the informant arrived late to the meeting, that the supplier had therefore left the meeting, and that Paiz had agreed to retrieve the narcotics from the supplier and return to the meeting. Ex. A at 575–87; Dkt. 451, Exhibit B ("Ex. B") at 726–45. The parties disagreed, however, regarding the audio-only portion of the recording. The government's translator "identified Mr. Ramos' voice speaking in a participatory way during the drug deal, while the defense translator did not (and generally found more words to be unintelligible as compared to the government version)." Mot. at 5. During the retrial, Ramos moved for a mistrial based upon allegedly improper statements made by the government, and the Court reserved judgment, allowing Ramos to renew the motion following the trial.[3] Dkt. 346. On December 3, 2015, the jury returned a verdict, convicting Ramos on all three counts.[4] Dkt. 347.

---

[3] Ramos contended that, during the government's closing argument, the government: (1) misrepresented prior testimony of Ramos' mother; (2) misrepresented the testimony of Ramos' interpreter during the retrial; (3) presented facts that were not in evidence; (4) misstated the standard governing reasonable doubt in criminal cases; and (5) improperly shifted the burden of proof from the government to Ramos. Dkt. 353 at 91–95.

[4] At the government's request, the Court dismissed the attempt count. Dkt. 378.

Ramos brought a renewed motion for a mistrial on January 25, 2016, on the grounds that the government had made misstatements of fact and law during the government's closing argument. Dkt. 364. On February 29, 2016, the Court denied Ramos' motion for a mistrial. Dkt. 371. On April 4, 2016, the Court sentenced Ramos to 168 months in prison. Dkt. 379. During the hearing, the Court stated: "Obviously, I do want to hear from Mr. Ramos if he wishes to be heard. No?" Dkt. 420 at 22. Ramos' counsel responded, "[w]e can move forward, Your Honor." Id.

Ramos thereafter filed a notice of appeal to the United States Court of Appeals for the Ninth Circuit on April 6, 2016. Dkt. 383. The Ninth Circuit affirmed Ramos' convictions, but vacated Ramos' sentence because although the Court inquired of Ramos' counsel whether Ramos wished to be heard, the Court "fail[ed] to personally invite Ramos to allocute at his sentencing hearing." Dkt. 430 at 4. Accordingly, the Ninth Circuit remanded for resentencing. Id. at 6.

The Court resentenced Ramos on September 17, 2018. Dkt. 443. During the hearing, the Court provided Ramos with the opportunity to allocute, and during Ramos' allocution, Ramos raised alleged deficiencies in his trial counsel's performance during the retrial. Dkt. 448-1, Ex. A ("Sentencing Tr.") at 9. Ramos expressed to the Court his view that "I feel that I didn't get a fair trial, . . . on the fact that my lawyer didn't help me out." Id. at 11. Because Ramos was represented by the Office of the Federal Public Defender during his retrial, the Court noted that, for the purposes of any potential habeas petition raising ineffective assistance of counsel, "if I need to appoint someone once you identify someone, I'm prepared to do that." Id. at 15.

On October 10, 2018, Ramos filed a motion seeking the appointment of counsel to assist in the preparation of Ramos' habeas petition. Dkt. 444. Consequently, on October 11, 2018, the Court appointed counsel from the Criminal Justice Act Panel to represent Ramos in connection with his petition. Dkt. 445. Ramos subsequently filed the present petition on September 17, 2019, raising ineffective assistance of his trial counsel. See Mot.

## II. LEGAL STANDARD

A petition pursuant to 28 U.S.C. § 2255 challenges a federal conviction and/or sentence to confinement where a prisoner claims "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Sanders v. United States, 373 U.S. 1, 2 (1963). Ineffective assistance of counsel constitutes a violation of the Sixth Amendment right to counsel, and thus, if established, is grounds for relief under § 2255. To establish ineffective assistance of counsel, a petitioner must prove by a preponderance of the evidence that: (1) the assistance provided by counsel fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 688, 694 (1984). A § 2255 motion may be resolved without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

A claim of ineffective assistance of counsel fails if either prong of the test is not satisfied, and a petitioner seeking habeas relief has the burden of establishing both prongs. Strickland, 466 U.S. at 697. With respect to the first prong, the Court's review of the reasonableness of counsel's performance is "highly deferential," and there is a "strong presumption" that counsel exercised reasonable professional judgment. Id. The petitioner must "surmount the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. After establishing an error by counsel and thus satisfying the first prong, a petitioner must satisfy the second prong by demonstrating that his counsel's error rendered the result unreliable or the trial fundamentally unfair. Lockhart v. Fretwell, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability that, but for his counsel's error, the result of the proceeding would have been different. Strickland, 466 U.S. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Id. The Court need not necessarily determine

whether petitioner has satisfied the first prong before considering the second; "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." Strickland, 466 U.S. at 670. Indeed, a petitioner's failure to allege the kind of prejudice necessary to satisfy the second prong is sufficient by itself to justify a denial of a petitioner's § 2255 motion without a hearing. Hill v. Lockhart, 474 U.S. 52, 60 (1985).

## III. DISCUSSION

Ramos asserts several bases for his ineffective assistance of counsel claim, including his trial counsel's purported failures: "(1) to file a motion to exclude the video and audio recording because it was unreliable, incomplete, and violated his due process and Confrontation Clause rights; (2) to retain a voice identification expert; (3) to ask the case agent during trial to identify the participants on the recording; and (4) to challenge a biased juror." Mot. at 6. The Court addresses each of Ramos' contentions in turn.

### A. Motion to Exclude

Ramos contends that during the retrial, "[t]he government had chosen to use equipment with a proven track record of failure, leaving an unintelligible partial video and full audio record that was highly prejudicial in that it recorded a drug sale, and highly confusing in that it was not clear who had participated and in what capacity."[5] Mot. at 7. Ramos further asserts that, at the time of the retrial, "[t]he government no longer possessed

---

[5] Ramos and the government disagree as to what the audio recording reveals regarding which individuals participated in the transaction. According to Ramos, the audio recording reveals that "[a]lthough he was intermittently present, Mr. Ramos . . . did not participate in the actual deal, which occurred in the garage rented by Mr. Ramos's mother to Mr. Villalobos." Mot. at 3–4. Ramos contends that the audio recording featured "two other men whose voices also were heard," the government failed to ascertain the "real name [sic] of the two other men," and both these individuals "had prior drug convictions." Id. at 8. The government asserts, however, that the audio recording makes clear that Ramos "is still there in the room" during the transaction, demonstrating that Ramos participated in the transaction. Dkt. 353 at 21–22.

the recording device itself, so [Ramos] could not determine whether it had actually malfunctioned, or whether the confidential informant . . . had just turned it off."[6] Mot. at 7–8. Thus, according to Ramos, "a reasonable defense lawyer would have filed a motion to suppress the audio/video tape both on constitutional and evidentiary grounds" and "[b]y not filing such a motion" to "exclude the video and audio recordings, and their questionable transcripts, . . . trial counsel provided deficient performance[.]" Id. at 8–9. The Court addresses Ramos' evidentiary and constitutional efforts in turn.

### 1. Evidentiary Objection Based on Reliability

The Court does not find persuasive Ramos' claims that his trial counsel's failure to move to suppress or exclude the audio/video recording and the recording's transcripts rises to the level of ineffective assistance of counsel because "[t]he failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." Shah v. United States, 878 F.2d 1156, 1162 (9th Cir. 1989).

Here, Ramos contends that "[t]he limited probative value of the recording was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading of the jury under Rule 403." Mot. at 10. However, a "recorded conversation is generally admissible unless the unintelligible portions are so substantial that the

---

[6] Ramos suggests that the government engaged in "the intentional destruction of exculpatory evidence," explaining the unavailability of the recording device during Ramos' retrial. Mot. at 10. The government disputes that it has concealed or destroyed evidence. According to a special agent with responsibility for the government's pre-trial investigation and trial/retrial preparation:

> All recording devices are maintained by the Operational Support Group. I contacted the Operational Support Group to locate the recording device, but was told that the device was no longer in HSI inventory. At that time, I suspected that the device may have been replaced because it was more than five years old, it had malfunctioned in the past, it recorded video in black and white, and the current recording devices recorded video in color.

Dkt. 451, Declaration of Rene Bardales ("Bardales Decl.") ¶ 5.

recording as a whole is untrustworthy." United States v. Gadson, 763 F.3d 1189, 1205 (9th Cir. 2014). During the retrial, the government "retained a different interpreter to prepare a brand new transcript . . . [who] testified that using high-quality headphones, he repeatedly watched and listened to the recordings, spending 46 hours on the project[.]" Mot. at 5. Ramos was able to retain his own interpreter, "who also repeatedly reviewed the recordings using headphones, listening to some portions up to 40 times." Id. Ultimately, "[t]he jurors were given copies of these competing transcripts, each noting the identity of the speakers and the words said, as determined by each interpreter." Id. That both the government and Ramos were able to retain interpreters who were able to understand the recording to the extent necessary to prepare competing transcripts belies Ramos' claim that the recording was so unintelligible so as to *require* exclusion. See United States v. Mercado-Ulloa, 267 F. App'x 568, 570 (9th Cir. 2008) (finding that trial counsel's failure to object to admission of taped conversation and written transcript did not amount to ineffective assistance of counsel where "the tape was unclear and garbled in places, but . . . [e]very person fluent in Spanish who listened to the tape . . . *substantially understood the taped conversation*" because "[i]t would have been reasonable for counsel to conclude there was no reasonable probability that the district court would have sustained [defendant's] objections.") (emphasis added).

Nor does the Court find Ramos' argument persuasive to the extent that Ramos challenges his trial counsel's failure to object to use of the *transcripts* as unreliable, either because the transcripts inaccurately transcribed the words spoken on the recording or because the transcripts contain inaccurate translations from Spanish to English. See United States v. Tisor, 96 F.3d 370, 377 (9th Cir. 1996) (finding that district court properly allowed jury to review transcript of audio recording where government official testified to accuracy of transcripts that he prepared, defense counsel was given the transcripts prior to trial, defense counsel was permitted to cross-examine official on transcripts, and district court "admonished jury that the tape recordings and not the transcripts were the evidence and that any discrepancies were to be resolved in favor of the tape recordings."); United States

-8-

v. Armijo, 5 F.3d 1229, 1234–35 (9th Cir. 1993) (finding that district court properly admitted translated transcript of recorded conversation where participants spoke Spanish because "translator testified that the transcript accurately reflected the conversation on the tape," the jury was instructed "that the tape, rather than the transcripts, was the evidence," and defense counsel "extensively cross-examined the translator on the accuracy of her translation[.]"). Here, both parties' translators testified that their respective transcriptions reflected the conversations on the recording and that their translations on their respective transcripts from Spanish to English were accurate, and both parties' translators were subject to cross-examination. Dkt. 351 at 134–39, 142–66; Dkt. 352 at 104–38. In addition, the Court instructed the jury that:

> You have listened to a recording in the English language that has been received into evidence. A transcript of the recording is being provided to you to help identify speakers and to help you decide what the speakers say. Remember that the recording is the evidence, not the transcript. If you hear something different from what appears in the transcript, what you heard is controlling.
>
> You have heard a recording in the Spanish language. A transcript of the recording has been admitted into evidence. The transcript is the official English language translation of the recording. . . . [S]ome of the recordings are in both English and Spanish. For the portion of those recordings that are in English, the recording is the evidence.

Dkt. 352 at 162–63. Accordingly, the Court concludes that the failure of Ramos' trial counsel to object to the admission of the recording and the transcripts, on evidentiary grounds, does not constitute a performance that is so deficient so as satisfy the first Strickland prong because these objections "do not appear to have a reasonable chance of success." Mercado-Ulloa, 267 Fed. App'x at 570.

### 2. Confrontation Clause Objection

Ramos also argues that his trial counsel performed deficiently by failing to move to exclude the recording on constitutional grounds. Mot. at 8–10. Pointing to the Sixth Amendment's Confrontation Clause, Ramos contends that "[t]he central concern of the

Confrontation Clause is to ensure the *reliability of the evidence* against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." Id. at 9 (emphasis added) (citing Maryland v. Craig, 497 U.S. 836, 845 (1990)). The Ninth Circuit has held that "absent unavailability and a prior chance for cross-examination, the Confrontation Clause forbids a statement of a nontestifying witness that is testimonial and offered for its truth." United States v. Brooks, 772 F.3d 1161, 1167 (9th Cir. 2014). To the extent that Ramos contends that his trial counsel erred in failing to object to introduction of the *transcripts* of the recording, Ramos' claim must fail because the individuals who prepared the transcripts presented at the retrial, the government's interpreter and Ramos' own interpreter, both testified at trial and were subject to cross-examination. See Crawford, 541 U.S. at 59 n.9 ("when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.").

Ramos does not appear to suggest that admission of the recording and the transcripts violated Ramos' Confrontation Clause rights because, for example, they included testimonial, out-of-court statements that were adverse to Ramos and made by individuals that were not subject to cross-examination during Ramos' retrial. See Brooks, 772 F.3d at 1167 ("the Confrontation Clause bars admission of testimonial statements of a witness who did not appear at trial if the statements are offered to establish the truth of the matter asserted[.]"). To the extent that Ramos suggests that his trial counsel provided ineffective assistance in failing to object to the use of Paiz's out-of-court statements, as captured by the recording device and transcribed by the parties' interpreters, the Court notes that prior to Ramos' retrial, Paiz entered a guilty plea, admitting that:

> Beginning on a date unknown and continuing through on or about February 12, 2010, [Paiz] *knowingly and intentionally conspired* to sell more than 50 grams of actual methamphetamine in Los Angeles County. Specifically, [Paiz] agreed to acquire and then distribute methamphetamine after [Ramos] identified methamphetamine customers. An example of [Paiz's] participation in the conspiracy occurred on February 12, 2010 when [Paiz] and [Ramos] met [the

-10-

informant] at [Ramos'] residence in Los Angeles, California. [Paiz] and an unindicted co-conspirator then drove to a residence in Huntington Park, California, and obtained approximately 70 grams of methamphetamine. [Paiz] and the unindicted co-conspirator then returned to [Ramos'] residence . . . and [Paiz and Ramos] sold approximately 54.85 grams of methamphetamine to [the informant] in exchange for $2,500.

Dkt. 69 at 6–7. Thus, to the extent that the recording and transcripts feature Paiz's out of court statements, Paiz's unavailability at trial does not render them inadmissible because they are co-conspirator statements. See United States v. Allen, 425 F.3d 1231, 1235 (9th Cir. 2005) ("conspirator statements are not testimonial and [are] therefore beyond the compass of Crawford's holding.").

The Confrontation Clause does not make inadmissible other statements made to the informant, captured by the informant's recording device, and transcribed by the parties' translators. That is because "statements made unwittingly to a government informant are clearly nontestimonial and the Confrontation Clause does not apply." Carrillo v. Montgomery, No. 2:15-cv-8967-CJC-PJW, 2017 WL 3028609, at *7 (C.D. Cal. May 10, 2017) (internal punctuation omitted) (citing United States v. Tucker, 609 Fed. App'x. 383, 385 (9th Cir. 2015)). Thus, statements made by other declarants, in the presence of the informant, and recorded by the informant's device, are not inadmissible simply because those declarants were not subject to cross-examination during Ramos' retrial. See Carillo, 2017 WL 3028609, at *7 ("there is no evidence that [declarant] had any idea that he was talking to . . . a confidential informant when he . . . admitted that [p]etitioner had killed [the victim.] Accordingly, [declarant's] statements to [the confidential informant] were non-testimonial and not subject to the Confrontation Clause.").

Nor does the Confrontation Clause make inadmissible either the informant's statements to Ramos or Ramos' responses. That is because the government's purpose in introducing the recordings was to admit Ramos' own statements, which constitute admissions, into evidence, and the Confrontation Clause does provide Ramos with the right to confront himself about his own statements. See Sturdivant v. Martel, No. 2:11-cv-

-11-

01264-GHK-SP, 2014 WL 6473778, at *20 (C.D. Cal. Sept. 2, 2014) ("The admission of the audio tape recording of conversations between Stafford and petitioner was proper and did not implicate the Confrontation Clause. The purpose of admitting the recordings was to admit petitioner's own statements, which constituted admissions, into evidence. Petitioner had no right to confront himself about his own statements."). Similarly, the informant's own statements fall outside the scope of the Confrontation Clause because "[t]he informant's statements were not admitted for their truth, and the admission of such context evidence does not offend the Confrontation Clause." United States v. Barragan, 871 F.3d 689, 705 (9th Cir. 2017) (internal citation and quotation marks omitted). See United States v. Eppolito, 646 F. Supp. 2d 1239, 1241 (D. Nev. 2009) (determining that "the Confrontation Clause and Crawford do not apply" and admitting confidential informant's video and audio recordings, including conversation between informant and defendants, because informant's statements were not offered to prove truth of matter asserted but instead to put defendants' recorded statements in context since "no one disputes that [the informant] did not actually intend to purchase drugs, except in the role of a government informant. Rather, [the informant]'s recorded statements have been offered [to] give context to [d]efendant's statements.").

### 3. Due Process Objection

Ramos also argues that "due process provides a defendant with a right to exculpatory evidence . . . [and] the intentional destruction of exculpatory evidence (the recording equipment) was bad faith . . . in violation of [Ramos'] Brady and due process rights." Mot. at 9–10. As an initial matter, Ramos provides no factual or evidentiary basis to support his contention that the government was unable to produce the informant's recording device during Ramos' retrial because the government intentionally destroyed it.[7] See Chavira v.

---

[7] In contrast, the government provides a declaration from an agent attesting that prior to Ramos' retrial, the agent attempted to locate the recording device used by the informant "but was told the device was no longer in HSI inventory." Bardales Decl. ¶ 5. After Ramos filed the present motion, the agent again attempted to locate the recording device and "was

Soto, No. 15-cv-1997-WQH-BGS, 2018 WL 828100, at *11 (S.D. Cal. Feb. 12, 2018) (denying habeas relief based on insufficient showing under second Strickland prong because "the conclusory and factually unsupported claims of prosecutorial misconduct and ineffective assistance of counsel raised . . . are so weak, that [petitioner] has not shown a probability sufficient to undermine confidence in the outcome."). Moreover, transcripts from Ramos' retrial demonstrate that Ramos' trial counsel did, in fact, raise the issue of the recording device's whereabouts. For example, during the cross-examination of Agent Lopez, another agent assigned to the investigation, the following exchange between Lopez and Ramos' trial counsel took place:

> Q: And a few days ago, the prosecutor gave you a subpoena that I had asked him to give you; correct?
>
> A: Correct.
>
> Q: And that subpoena was for you to bring the recording device that was used on February 12th, 2010 to trial?
>
> A: Yes.
>
> Q: And you were not able to bring that recording device?
>
> A: No.
>
> Q: And you don't know where that recording device is?
>
> A: No, I do not.

Dkt. 352 at 51. During trial counsel's examination of Agent Bardales, the same agent who attests, in connection with the government's opposition to Ramos' habeas petition, that the recording device was likely replaced, Bardales testified that the government "could not locate" the device. Id. at 157. Finally, Ramos' trial counsel again raised the issue of the recording device's unavailability during closing arguments: "And finally, what about that

---

then provided with an internal HSI memorandum dated March 31, 2014, that described a 2013 internal audit of HSI electronic equipment." Id. ¶ 6. The memorandum revealed that a Hawk recording device, bearing the same serial number and barcode as the Hawk device used by the informant, was "no longer in HSI inventory." Id.

recording device? . . . And then the case agents, both of them, I asked both of them, the people who are responsible for preserving that evidence so that I could inspect it and so that you could know whether that video . . . really just cut out or whether someone was tampering with it? *They lost that evidence?* That is reasonable doubt." Dkt. 353 at 75 (emphasis added). Accordingly, the Court finds that, with respect to the recording device, Ramos' trial counsel adequately raised the issue of spoliation of evidence, and Ramos' request for habeas relief on this basis is without merit. See Cole v. Grounds, No. 5:13-cv-00217-PSG-AGR, 2015 WL 1383132, at *5 (C.D. Cal. Mar. 23, 2015) (denying ineffective assistance of counsel petition based on claims that trial counsel failed to raise destruction of evidence because "[p]etitioner's argument that trial counsel failed to argue about destruction of evidence is contradicted by the record.").

For the foregoing reasons, the Court concludes that Ramos' trial counsel did not provide ineffective assistance of counsel by failing to seek the exclusion of the recording or the transcripts on either evidentiary or constitutional grounds.

### B. Voice Identification Expert

Ramos contends that his trial counsel provided ineffective assistance because "a reasonable counsel would have retained a voice identification expert." Mot. at 11. According to Ramos, "the critical issue in the case was whether Mr. Ramos participated in the drug sale. Given the nature of the government's evidence, the key to this question was whether his voice could be heard on the audiotape during the drug deal. . . . [A]n expert *could have* determined that Mr. Ramos' voice was not on the tape in a participatory manner." Id. (emphasis added).

To prevail on his ineffective assistance claims, Ramos must establish: "(1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense." Gallegos v. Ryan, 820 F.3d 1013, 1025 (9th Cir. 2016) (internal citation omitted). The Ninth Circuit has held that a petitioner seeking habeas relief based upon ineffective assistance of counsel cannot satisfy the second Strickland prong premised on conjecture regarding the hypothetical testimony of a favorable expert witness. See Grisby

-14-

v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) ("Grisby has failed to establish how expert testimony would have raised a 'reasonable probability' that the outcome of the trial would have been different. *Speculation about what an expert could have said is not enough to establish prejudice.*") (emphasis added). Ramos' speculative assertion that "reasonable counsel would have retained a voice identification expert" that "could have determined that Mr. Ramos' voice was not in the tape in a participatory manner" is insufficient to establish the prejudice necessary for habeas relief. Mot. at 11; see also Maria v. Grounds, No. 2:13-cv-01183-DSF-MRW, 2015 WL 4608086, at *6 (C.D. Cal. Mar. 17, 2015) ("[A] prisoner must generally provide an affidavit from a potential witness showing that the witness would have provided testimony helpful to the defense. . . . Speculation about what a witness could have said is not enough to establish that an attorney provided ineffective assistance or that a defendant was prejudiced.") (internal citations and quotation marks omitted).

Moreover, "[w]hile the Constitution requires that a criminal defendant receive effective assistance of counsel, the presentation of expert testimony is not necessarily an essential ingredient of a reasonably competent defense." Bonin v. Calderon, 59 F.3d 815, 834 (9th Cir. 1995). Thus, even assuming *arguendo* that Ramos has identified an expert witness that *would* have testified "that Mr. Ramos' voice was not on the tape in a participatory manner," Mot. at 11, the purported failure of Ramos' trial counsel to call such an expert witness does not, itself, constitute ineffective assistance of counsel. That Ramos' trial counsel repeatedly argued this point to the jury undermines Ramos' claim of prejudice.[8] See Galloway v. Tilton, 316 F. App'x 530, 531 (9th Cir. 2008) (determining

---

[8] The record itself makes clear that Ramos' retrial featured expert testimony. A certified Spanish interpreter and translator, with 30 years of experience conducting interpretation, translation, and transcription services, reviewed the recording and testified on Ramos' behalf. Dkt. 352 at 105–09. Although not a "voice identification expert," Ramos' interpreter testified that, consistent with "the industry standard on marking a voice," "[i]f I positively recognize the person's voice, I identify it as a given speaker. If I don't, it's not up to me to make that call, and I have to put [down on the transcript] unidentified." Id. at 114. And, based on the interpreter's transcription and testimony,

that trial counsel's failure to retain ballistics expert was not deficient because "counsel effectively cross-examined the prosecution's expert and presented additional photographic evidence, by which he won significant concessions from the prosecution's expert. [Defendant's] counsel had reason to avoid introducing an expert whose testimony would be as vulnerable to the prosecution's cross examination as the prosecution's expert was to the cross examination by [defendant's] counsel.").

The Court therefore concludes that Ramos has failed to establish that the failure of Ramos' trial counsel to call a "voice identification expert" constitutes ineffective assistance of counsel. Accordingly, Ramos is not entitled to habeas relief on this basis.

### C. Case Agent Testimony

Ramos next contends that his trial counsel provided ineffective assistance by failing "to ask the case agent during trial to identify the participants on the recording[.]" Mot. at 6. However, "counsel's tactical decisions at trial, such as refraining from cross-examining a particular witness or from asking a particular line of questions, are given great deference and must similarly meet only objectively reasonable standards." Dows v. Wood, 211 F.3d 480, 487 (9th Cir. 2000). The Court cannot say that the failure of Ramos' trial counsel to ask the government's case agent to identify the participants on the recording was not "objectively reasonable." To the contrary, trial counsel's decision appears to be strategically sound: had trial counsel asked the case agent to identify the participants on the recording, the case agent possibly could have identified Ramos as one of the active participants in the transaction, undermining Ramos' defense that the person on the recording participating in the transaction was some male other than Ramos. See, e.g., United States v. Winchenbach, No. CRIM. 98-38-P-C, 2000 WL 891962, at *4 (D. Me. June 30, 2000) (finding that trial counsel's failure to question witness "about the identity of the person who in fact made the alleged sale of drugs with which the defendant was

---

Ramos' trial counsel explicitly argued to the jury during closing argument that Ramos was not an active participant in the February 12, 2010 transaction. Dkt. 353 at 59–60.

charged" did not constitute ineffective assistance because "the defense theory was that, if any drug transaction took place on the day in question, [it occurred] . . . somewhere other than at the trailer which the government contended was the defendant's residence" and [a]sking a . . . witness who actually sold the cocaine . . . would be inconsistent with this strategy[.]").[9] Accordingly, the strategic decision of Ramos' trial counsel not to ask the government's case agent to identify the participants on the recording does not constitute ineffective assistance of counsel under these circumstances. See Hung Van Nguyen v. Uttecht, No. 16-cv-1711-JCC-JPD, 2017 WL 5054574, at *9 (W.D. Wash. July 21, 2017) ("counsel's decision not to ask a particular question of a witness . . . is generally not a basis for finding ineffective assistance of counsel.").

**D.     Juror Bias Claim**

Ramos argues that his trial counsel provided ineffective assistance by failing to challenge a biased juror. Mot. at 11. He asserts that "one of the jurors repeatedly shook his head and [sic] him, making inaudible comments under his breath. From his demeanor and body language, Mr. Ramos believed the juror was biased against him." Mot. at 11. According to Ramos, the juror "already f[ound] me guilty without even going full into the trial," and "trial counsel was ineffective for not brining [sic] this . . . to the Court[.]" Id. at 13.

"A court confronted with a *colorable claim* of juror bias must undertake an investigation of the relevant facts and circumstances." Dyer v. Calderon, 151 F.3d 970, 974 (9th Cir. 1998) (emphasis added). However, "the Fifth and Sixth Amendments do not

---

[9]     During his sentencing, Ramos acknowledged that his trial counsel's decision not to ask the case agent to identify the persons heard on the audio recording reflected a tactical decision. See Sentencing Tr. at 11 ("[T]he prosecution put three different transcripts where none of them were able to identify me. . . . They asked the main agent on the case, do you recognize Mr. Ramos' voice? He said no. I asked [trial counsel], can you ask him again [be]cause that happened in the first trial? *She said she didn't want to do that because she didn't want to impeach me.*") (emphasis added).

-17-

always mandate a hearing regarding allegations of juror bias in federal cases[.]" Tracey v. Palmateer, 341 F.3d 1037, 1045 (9th Cir. 2003). To the contrary, a district court may reject a defendant's generalized claim of juror bias based solely on the defendant's observations of the juror's facial expressions during testimony. See United States v. Gibson, 353 F.3d 21, 25–26 (D.C. Cir. 2003) (finding that district court properly declined to question juror during trial where defendant "requested that the juror be removed because [defendant] believed she had already reached a decision in light of her facial expressions and general demeanor" because "[d]efense counsel's unsubstantiated suspicion does not, on its own, require the district court to conduct jury questioning.") (internal citation and quotation marks omitted).

Here, the Court would not have been required to investigate Ramos' claim of juror bias, based only on Ramos' unsubstantiated suspicion that the juror's alleged facial expressions signified that the juror had prejudged the case, had Ramos' trial counsel raised this claim during Ramos' retrial.[10] His trial counsel's failure to do so therefore does not constitute ineffective assistance of counsel. See Campbell v. Ducart, No. 2:14-cv-01930-JKS, 2017 WL 915302, at *10 (E.D. Cal. Mar. 8, 2017) ("There is no constitutional requirement, and no decided case of the United States Supreme Court, requiring a trial court to conduct any investigation into juror misconduct or tampering unless sufficient evidence has been demonstrated that actual juror misconduct may exist. . . . [B]ecause

---

[10] At his resentencing, Ramos indicated that during the retrial, "[Ramos] asked [trial counsel], 'can you ask the juror what's going on with that man.'" Sentencing Tr. at 10. According to Ramos, his trial counsel "never respond[ed] and only thing she said was 'don't make funny faces at him. Leave him alone.'" Id. Thus, the decision of Ramos' counsel *not* to raise the possibility of juror bias appears to be an objectively reasonable one. See Amico v. Alameida, 122 F. App'x 357, 358 (9th Cir. 2005) ("in evaluating an ineffective assistance of counsel claim, [t]he court must determine whether . . . the identified acts or omissions were outside the wide range of professionally competent assistance. In this case, [petitioner's] counsel could have reasonably rejected raising . . . the juror bias issue in favor of raising only certain other issues that he believed had a stronger likelihood of success.") (internal citation and quotation marks omitted).

[petitioner] fails to show that he was deprived of an impartial jury, he likewise fails to show that counsel was deficient for not requesting the removal of the affected jurors on that basis."); accord Claros v. Gipson, No. 2:12-cv-10283-ODW JPR, 2013 WL 8021294, at *26 (C.D. Cal. Dec. 26, 2013) ("Petitioner's claim of ineffective assistance based on counsel's purported 'ignoring' of 'obvious juror bias is without merit. Petitioner points to no evidence of actual or implied juror bias.").

## IV. CONCLUSION

In accordance with the foregoing, the Court **DENIES** Ramos' petition for habeas relief based upon ineffective assistance of counsel. The Court also **DENIES** Ramos' motion to the extent that that Ramos seeks discovery and an evidentiary hearing.

**IT IS SO ORDERED.**

DATED: December 20, 2019

_____
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE

-19-